[No. 32253.  Department Two.  March 19, 1953.]

INA PATRICIA SAFFER, *Respondent,* v. JOHN WILLIAM SAFFER, *Appellant.*[1]

[1]Reported in 254 P. (2d) 746.

*Greenwood & Shiers,* for appellant.

*Merrill Wallace,* for respondent.

DONWORTH, J.—Plaintiff commenced this action seeking a divorce from her husband. He cross-complained, asking for a divorce. A trial to the court resulted in a decree granting each party a divorce from the other and awarding the custody of the children to plaintiff subject to reasonable

rights of visitation by defendant. The decree also divided the property between the parties and ordered defendant to pay eighty dollars per month for the care, education and maintenance of the children. Defendant's motion for a new trial was denied, and he appeals.

The parties were married July 1, 1938, and had two minor daughters living at the time of the trial. One daughter was then ten years old, and the other one was not quite three.

At the time of their marriage, appellant was employed as an apprentice machinist in the Bremerton navy yard, where he was employed for nearly eleven years. In December, 1945, he secured employment at South Kitsap high school and soon thereafter was given an opportunity to teach a mechanical drawing class when the regular teacher became incapacitated. Subsequently, he attended night school, took correspondence courses, and attended summer school at Pullman, Washington, for four summers. During the period that he was improving himself, he adequately provided for his family and managed to construct a home through his own efforts. At the time of trial, he was earning three hundred dollars per month teaching "metal shop" at the high school under a vocational certificate and expected to complete his college education during the following summer and receive a Bachelor of Arts degree.

The history of the married life of the parties during their thirteen years together was not unusual except for an episode in 1944, which will be described later in the opinion.

In August, 1951, the entire Saffer family took a trip to California. They were accompanied by a man who had been a friend of both parties for approximately five years. Appellant felt that this man was too friendly with his wife and informed each of them that he objected to their conduct. In spite of his protests, they continued to see each other frequently, both before and after the separation.

Respondent took the children and left appellant in September, 1951. Soon thereafter she instituted this action. The grounds alleged were appellant's excessive sexual demands and the commission of one unnatural act.

After this action was instituted, appellant for the first time began to check on his wife's conduct. On the basis of what he discovered, he filed his cross-complaint for divorce.

Appellant appeals from the decree of divorce granted to respondent and specifies five assignments of error.

■ His first assignment is that the trial court erred in overruling his motion to dismiss at the close of respondent's case. Since appellant did not stand on the motion, but elected to present his own evidence, he thereby waived this assignment.

Secondly, appellant contends that the trial court erred in entering finding of fact No. V, which reads:

"That the marital life of the parties has been discordant and troubled due to the defendant's excessive and abnormal sexual demands upon the plaintiff making it impossible for the parties to live together as husband and wife. That because of plaintiff's action defendant has become suspicious of plaintiff and by reason of such suspicion is unable to live with the plaintiff as his wife."

■ Ordinarily, where an appellant has himself sought and obtained a divorce on a cross-complaint, from which there has been no cross-appeal, we will not consider assignments of error directed to findings of fact, conclusions of law, or decretal provisions awarding a divorce to a respondent, because the parties will remain divorced whether or not the respondent should have been granted a divorce. *Schirmer v. Schirmer,* 84 Wash. 1, 145 Pac. 981; *Merkel v. Merkel,* 39 Wn. (2d) 102, 234 P. (2d) 857, and cases cited.

In this case, however, much more is involved than a sentimental question as to which one of the parties is to blame for the divorce. *Schirmer v. Schirmer, supra.* Finding No. V amounts to a pronouncement that appellant is guilty of a revolting crime which might terminate his career as a school teacher or lead to proceedings under the sexual psychopath law. Laws of 1951, chapter 223, p. 669 (*cf.* RCW 71.06.010 *et seq.*). A careful scrutiny of the evidence relating to the first sentence of this finding of fact is, therefore, required.

In that sentence, the court found that appellant was guilty of two things which entitled respondent to a divorce (a) excessive sexual demands and (b) abnormal sexual demands.

With regard to finding (a), the record shows a direct conflict in the testimony of the parties. Since the trial court saw and heard the parties testify and is the best judge of their credibility, it is our rule that we will not disturb the findings unless the evidence preponderates against them.

In this case, however, the record contains several letters written by respondent to appellant which refute her own testimony on this point. These letters were written in the summer of 1949, while appellant was attending summer school in Pullman. They are affectionate in tone and refer to the intimate marital relations existing between the parties in a manner which disproves her charge that appellant had pursued an unreasonable course of conduct toward her for "quite a few years." On the contrary, they express appreciation for his considerate treatment of her and evidence her desire to continue marital relations when he returned home.

■ Even if ground (a) had been established by the evidence, respondent is not entitled to a divorce in the absence of a showing that appellant's alleged conduct was detrimental to her. It is the effect of the erring spouse's conduct on the other that determines whether or not the conduct complained of constitutes cruelty or personal indignities. *Baselt v. Baselt,* 37 Wn. (2d) 461, 224 P. (2d) 631. Here there was no showing that respondent's health or well-being were impaired. As was said in *Thompson v. Thompson,* 16 Wn. (2d) 78, 132 P. (2d) 734:

"Upon the question of their sexual difficulties, there is a sharp conflict in the testimony. There was no expert testimony upon the question of appellant's health. Without reviewing the evidence on this point, it is sufficient to say that, if the court believed the respondent's testimony, it was not error to reach the conclusion expressed in the court's oral opinion:

" 'On the other hand, I am not impressed that the sexual relations of the two were such as to convict him of what she is attempting to tell the court here.' "

In the present case, there was no testimony, either medical or lay, that appellant's alleged demands had been of such a character as to injure her health. Respondent did testify that since she left her husband she no longer felt "worn out and nervous" but had built up and gained weight. Accepting this testimony as true, there is no showing that her improved condition was due to the cessation of appellant's conduct. It might have been caused by change of environment, less house work, or change of diet.

■    From our examination of the record, we find that the evidence preponderates against the portion of finding No. V relating to excessive sexual demands.

Part (b) of finding No. V is far more serious. It referred to "abnormal sexual demands." Respondent's testimony referred to but one abnormal act. No facts were given. Her only testimony was a bare conclusion that the reason she left appellant was "the abnormal sexual attempt. It wasn't just an attempt."

Appellant denied the charge and testified that the first he heard of it was in a conversation with respondent after the separation. She came to the place where he was working and asked if he intended contesting the divorce. He told her he did not know and she replied:

"If you do, I'll drag your name through the mud. Your name won't be any good to you and I'll accuse you of being a sex pervert or a sex maniac or a drunkard, and the court will believe me because I am a woman."

Respondent denied using these words but said she told him that she "would accuse him of the facts."

Appellant also denied having told anyone that he had made any unnatural demands. In rebuttal, Mrs. Zoe Heath was called by respondent and over timely objection was allowed to testify that appellant had told her shortly after the separation that he had performed an unnatural act of sex with respondent.

██ The prior inconsistent statement of the witness was admitted only for the purpose of impeaching appellant and not as proof of the truth of what was said. The statement, therefore, should not have been considered as corroboration of respondent's charge. *State v. Fliehman,* 35 Wn. (2d) 243, 212 P. (2d) 794, and cases cited.

The trial court in its oral decision (which may be considered in connection with finding No. V) said on this point:

"The charge that the plaintiff makes against the defendant is one that rests entirely in the minds and consciences of the people themselves. There is some corroboration, however, to the charge that the plaintiff has made, and I can't help but feel compelled under all of the circumstances to determine that sufficient proof has been adduced to warrant the Court in granting the plaintiff a divorce, although I would be equally willing to grant both parties a divorce."

██ Under the *Fliehman* case, *supra,* the court erred in stating that there was some corroboration of respondent's charge of misconduct by appellant. There being no corroboration, respondent's testimony (quoted above), which stated no facts whatever, is insufficient to support that portion of finding No. V in which the court found that appellant was guilty of abnormal sexual demands.

From what we have said, it is apparent that the court erred in entering the first sentence of finding No. V, since the evidence preponderates against it. Without that finding, there is nothing to support the portion of the decree awarding respondent a divorce. Consequently, as to the first paragraph of the operative portion of the decree (which grants respondent a divorce), it is reversed with instructions that it be stricken.

There being no cross-appeal nor error assigned relative to the second operative paragraph of the decree granting appellant a divorce, it must stand and the parties will remain divorced. See *Merkel v. Merkel, supra.*

██ The fourth assignment of error challenges that portion of the decree which awarded the custody of the two children to respondent and granted appellant liberal rights of visitation. This assignment places upon this court a very

grave responsibility. We must determine whether the trial court abused its discretion in the solution of this difficult problem. Having in mind the precept that the welfare of the children is our paramount consideration irrespective of the wishes of either parent, we will review the evidence relating to the moral and financial qualifications of the respective parties to provide a proper home for these young girls. *Warnecke v. Warnecke,* 28 Wn. (2d) 259, 182 P. (2d) 699.

The record shows that respondent has given the children proper care as far as their physical requirements are concerned, but it also shows that they were far from her paramount interest in life.

In 1944, respondent left appellant and her daughter (then their only child) and, in company with a man then in the military service, went to Los Angeles and Las Vegas, Nevada, where she instituted a divorce proceeding. She admitted committing adultery during this time.

While in Las Vegas, she signed an agreement in which she gave up all claim to her daughter (whom she had left with Mrs. Boyer, appellant's married sister). She also quitclaimed to appellant her interest in the Hood Canal property.

Appellant went to Las Vegas and persuaded respondent to return. Somewhat later, she did return after he sent transportation money to her. The entire episode covered a period of approximately two months.

Respondent's conduct during this period was fully condoned by appellant. However, it is a factor to be considered when judging her fitness to have the care and custody of the two minor children. Other factors to be considered are the type of letters she wrote to appellant, her conduct with the other man before the separation in September, 1951, and her threat to blacken appellant's reputation if he contested this action.

The evidence shows that respondent was very friendly with this other man before, during, and after the trip to California in 1951. This friendship continued right up to the time of trial. The trial court summarized the evidence of their relationship as follows:

"I must comment, of course, on Mrs. Saffer's conduct and her behavior. Now, I don't know, I know that it has been highly suspicious. We can't say much more than that about it. There is, however, no proof whatsoever of immorality or adultery. There is no proof other than that she has perhaps been indiscreet in her associations. Now, many of the things she did I think are things that might be well explained. I think perhaps she is entitled to some benefit of the doubt. What transpired in 1944 I don't think can be of any consequence in this case today, except in so far as it may throw background light upon subsequent events, but that time has passed; that is over and done with. Now, then, I recognize, I realize that her conduct has not been as judicious, it hasn't been as discreet perhaps as we might have expected. Yet, on the other hand, there is no showing of wrong. Her associations with this man have almost always, except in the incidents where he visited her while he was putting up a chimney, outside of that, almost all of their associations have been in the presence of other people. They haven't gone off by themselves anyway. What they have done they have done in the open. . . . I just can't feel that in spite of all that, in spite of what might be thought about it, that I can deprive this woman of her children."

If respondent is to retain the custody of the children, their home will be the house at Gorst, which appellant has nearly completed. By the terms of the decree, appellant is directed to finish the structure, pay all the bills, and cause the land to be conveyed to respondent. This will require total payments of $1,475 to be made by him.

In regard to respondent's financial ability to care for the children, she testified:

"Q. Do you feel that you're capable of holding a job to earn money? A. Oh, yes. Q. Have you looked for any work since you separated from your husband? A. No, I was going to put my application in the Yard, and I did, but that is as far as I went. Q. Did you ever hear anything from that application? A. Yes, I could have. They sent me a card saying to be over there for the test, and that morning, I had the flu, and I was unable to go. Q. What position did you apply for? A. Messenger. Q. How long ago was that? A. Last November. Q. Have you made any other application for any kind of work since that time? A. No, just baby sitting.

"Q. What do you propose to do, . . . Mrs. Saffer, do you propose to just live in your house out here and have Mr. Saffer support you? A. Until I can get a job. Q. You have no plans for a job? A. I thought of going on Welfare and I could support the children until I could get a job. Q. You think a man who earns $290.00 should have his children on Welfare? A. Yes. Q. Did you think this out at all before you decided to leave him? A. Yes. Q. What, then, do you plan to do? A. To acquire help from the Welfare along with his help until I could get a job. I could apply for salesgirl in most any store. Q. If you work, what will become of the children? A. I have several friends they could be left with. Q. You have no one particularly in mind? It would have to be someone not related to you, or someone who you don't know, now, wouldn't it? A. It would probably be Mrs. Heath. Q. She's a good friend of yours? A. Yes. Q. Is she a witness for you here today? A. Yes."

According to her testimony, respondent has had no training to fit her for any particular type of work. She hopes to be employed as a messenger in the navy yard, and until so employed she must rely on public assistance. If and when employed, respondent will have to leave her daughters with neighbors or friends.

We recognize that the custody of minor children, particularly in the case of daughters, will not be taken from the mother unless it is clearly shown that she is not a fit and proper person. *Eliason v. Eliason,* 10 Wn. (2d) 719, 118 P. (2d) 170; *Allen v. Allen,* 28 Wn. (2d) 219, 182 P. (2d) 23; *Braun v. Braun,* 31 Wn. (2d) 468, 197 P. (2d) 442. However, from our examination of the testimony we conclude that, in view of the matters above referred to, the trial court abused its discretion in awarding to respondent the custody of the two minor daughters. *Taylor v. Taylor,* 14 Wn. (2d) 293, 126 P. (2d) 855; *Atkinson v. Atkinson,* 38 Wn. (2d) 769, 231 P. (2d) 641.

That appellant is a fit and proper person to have the custody of his daughters, seems not to be disputed. His testimony as to the affection he has for them has not been controverted. Concerning his conduct, the trial judge said:

"The defendant has been industrious, has been hard working, he's been sacrificing, he has done everything he could to improve himself and better himself and has made remarkable and wonderful progress, for which he deserves commendation and praise, nothing short of that. I think he is entitled to it."

We hold that appellant should be awarded custody of the children if, upon a remand of this case, he can satisfy the trial court that he is able to provide a proper home for them in Kitsap county or Mason county.

At the trial, appellant proposed (if awarded custody) to have the children brought up in the home of his sister and brother-in-law (Mr. and Mrs. Charles Boyer). It is not contended that the Boyers are not in all respects proper persons to raise these girls or that they would not give them a good home. Unfortunately, at the time of the trial they had moved from a ten room home owned by them in Kitsap county and were living at Soap Lake, where Mr. Boyer was employed as an electrician. Mrs. Boyer testified that they contemplated moving again either to Ephrata or Wenatchee.

Under these circumstances, we agree with the trial court that these children should not be brought up so far away from both of their parents that visitation would be difficult and expensive.

Approximately a year has passed since the trial, and we feel that, in order to provide these children with a proper home, the trial court should be permitted to take further evidence regarding appellant's present circumstances and his ability to provide them with such a home.

The last assignment of error challenges the propriety of the property award made by the trial court. While the disposition of the property was proper, based upon the awarding of the custody of the children to respondent, we think that, in view of the changes in the decree which we have ordered herein, the trial court upon remand should be permitted to make such change, if any, regarding the division of the property as it deems fair and equitable.

Accordingly, we make the following disposition of this case:

1. The decree in so far as it grants respondent a divorce is reversed, with directions to dismiss her complaint.

2. There being no cross-appeal, the portion of the decree granting appellant a divorce on his cross-complaint is not before us and, therefore, stands as entered by the trial court.

3. The portion of the decree awarding custody of the two minor children to respondent is reversed, with directions to award their custody to appellant if, upon the remand of this case, the trial court is satisfied that appellant is able to provide a proper home for them in Kitsap county or Mason county. If the trial court is not so satisfied, then it may make such provision for their bringing up (not inconsistent with the views expressed herein) as it deems proper. In case it is determined that the children shall be brought up in a home other than one in which appellant is living, he shall pay the sum of eighty dollars per month for their support until further order of the trial court.

4. The portion of the decree granting respondent judgment against appellant in the sum of eighty dollars per month for the care, maintenance, education, and support of the minor daughters is reversed.

5. The case is remanded for the taking of further testimony to determine in whose home the children shall be brought up and to make such change, if any, in the property award as the court deems fair and equitable, and as the welfare of the children may require.

6. Upon such further hearing, the court may make such order as to the children and respondent's right of visitation (not inconsistent with the views expressed herein) as the court may deem proper.

7. In all other respects, except as hereinabove noted, the decree is affirmed.

Each party shall bear his own costs on this appeal.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.