**SLYH, Plaintiff-Appellee, v. SLYH, Defendant-Appellant.**

Ohio Appeals, Second District, Madison County.

No. 199. Decided October 27, 1955.

538

Forrest E. Sidener, Jr., London, for plaintiff-appellee.

Herbert, Tuttle, Applegate & Britt, by C. Richard O'Neill, Columbus, John W. Tanner, London, for defendant-appellant.

## OPINION

By MILLER, PJ.

This is an appeal on questions of law from a decree of the Common Pleas Court granting a divorce to the plaintiff on the ground of extreme cruelty. There were certain further orders as to alimony and support money for a minor child of the parties, but they are not involved on appeal. The petition was in short form and after alleging jurisdictional facts charged that:

"Defendant has been guilty of extreme cruelty, the exact details of which will be shown at the hearing of this cause."

The cause came on for trial and after the plaintiff had testified, defendant moved for judgment on the grounds that plaintiff had not stated a cause of action for extreme cruelty; had not come into Court with clean hands, in that he, by his own admissions, has been guilty of extreme cruelty and gross neglect toward the defendant; and, on the third ground, that if such cause of action ever did exist, that it was condoned by his continuing to have marital relations. The motion was overruled.

Defendant renewed this motion at the close of plaintiff's case in chief, and it was overruled.

After the Court had granted the decree, defendant moved for separate findings of fact and conclusions of law which motion was sustained and the findings are before us.

Four errors are assigned: The first is that the trial judge erred in overruling defendant's motion for a directed verdict at close of plaintiff's own testimony and the second, that he erred in overruling the same motion at the conclusion of plaintiff's testimony in chief.

It will be noted that the motion does not incorporate a request for judgment for failure of the plaintiff to prove the grounds for divorce set forth in his petition. It is only that he failed to state a cause of action. The petition was not tested by demurrer nor was there any motion to make it definite and certain. Such a petition has been held to be sufficient as against the claim of error in an Appellate Court. **Oldham v. Oldman, 6 Abs 282.** Formerly, the courts held that a petition in an action for divorce should specify some act or acts constituting the ground for divorce upon which the suit was predicated. Indeed, it is generally held that the rules of pleading in civil cases apply in divorce actions. However, there has grown up in more recent years a practice which is quite general, to charge only the ground of divorce which is to be asserted at the trial. Such a petition has been held sufficient in the absence of demurrer or a motion to make definite and certain. **Seibel v. Seibel, 30 Oh Ap 198.**

The first motion was properly overruled because it is not clear that it was directed to the evidence but to the petition and it was premature, the plaintiff not having completed his testimony in chief. The second motion was broad enough to test the sufficiency of the evidence to prove "extreme cruelty" at the conclusion of plaintiff's case in chief and should have been sustained for the reasons we hereinafter discuss. The motion was not renewed at the conclusion of the whole case.

The clean hands doctrine, one of the grounds of the motion, may or may not be applied by the trial court at its discretion, provided, of course, that the party to whom the decree is awarded has made sufficient proof to authorize it. The ground of condonation is not well-made because it was not pleaded. Condonation has been uniformly held to be an affirmative defense.

The third assignment of error is "irregularity in the proceedings of the trial court amounting to abuse of discretion by which the defendant was prevented from having a fair trial. Without comment, we hold against appellant on this assignment.

The fourth assignment of error is, the judgment of the court is against the manifest weight of the evidence and is contrary to law.

Inasmuch as we have special findings of fact and conclusions of law, we test them to see if they are supported by the record. Most of the findings are not controverted in the evidence and we only consider those which are challenged by the appeal.

Paragraph No. 9:

"That the marriage of the parties, which has some inferences of 'Badges of Fraud' in the procurement on the defendant's part, positively arose because defendant became pregnant before the parties were married, which marriage was at the demand and insistence of the defendant for the purpose of giving the child a name and was a marriage of necessity."

Paragraph No. 12:

"That shortly after the marriage defendant maliciously premeditatedly and intentionally persistently and unjustifiably by words, acts and conduct attempted to enforce her will upon plaintiff with respect to her child born out of wedlock, which together with all the other facts and surrounding circumstances had the effect of permanently destroying the peace of mind and happiness and seriously affecting the ability to work of this plaintiff, so as to render the marital relation intolerable."

Paragraph No. 13:

"That the testimony of plaintiff was corroborated by testimony of his father, his mother and by defendant's testimony and the proof is by satisfactory evidence."

The conclusion of law is that plaintiff is entitled to a decree of divorce on the ground of the extreme cruelty of defendant.

Upon the testimony in this case there is very little material dispute of fact. The question presented is whether or not the facts which may be accepted as true constitute a ground in law for a divorce on the ground of extreme cruelty.

Three causes of the difficulties of the parties appear from the record.

1—The desire and purpose of plaintiff to divorce the defendant.

2—Their difference in religious faith.

3—Their acts and conduct respecting the place where the child of defendant should live.

The second and third causes were the bases of plaintiff's action. The trial judge refused to support the second but granted the decree upon the third holding, that, as to it, the defendant was chargeable with extreme cruelty toward the plaintiff.

We hold that as to the first and second it is clear that the defendant was the aggressor and at fault. As to the third, that the act and conduct of defendant as shown by the record does not, if construed most favorably to the plaintiff, constitute a ground for divorce under the statute. That as to this cause of difficulty although both parties were culpable in engaging in the numerous and bitter quarrels, the defendant could not be blamed for the position which she maintained as to the right of her daughter to live with her.

The parties had been keeping company some little time before their marriage and plaintiff learned from defendant that she was pregnant. There is no question but that the plaintiff was somewhat perturbed about this information and the defendant suggested that they get married. They were married just a short time after the information as to the pregnancy was divulged. The plaintiff knew that the defendant had the daughter, T. Defendant testifies that it is not specifically denied that discussion was had before the marriage as to what disposition would be made of T., that plaintiff thought that she could live with the parties at the residence of his father with some suggestion that later she might be adopted by plaintiff. In any event, the parties by common agreement, went to the home of plaintiff's parents to live. They were farmers and plaintiff was engaged in assisting his father in the operation of about 200 acres of land. He received over all about $25.00 per week as payment for his services and board and room for himself and wife. Although the plaintiff knew of T., unfortunately, the parties did not tell his parents of the situation although defendant suggested that that would be proper procedure. When the parents of plaintiff, particularly his father, learned about T., they refused absolutely to permit her to live at their home. T. was left with the parents of defendant in Columbus and defendant stopped to see her frequently which made her late in getting home from her work at a jewelry store in Columbus, which fact plaintiff resented. The situation respecting T. was a source of much of the difficulty which arose between the parties.

Defendant, prior to her marriage, had for about four years been employed at a weekly salary of about $45.00 per week and she continued to work until about a month before the birth of the child of the parties. After the birth of the child and for a short time before its birth, plaintiff did not work.

The parties held different religious beliefs. Plaintiff was a Methodist; defendant was a Catholic. Prior to the marriage the parties consulted a priest preparatory thereto. Plaintiff signed an agreement wherein he consented that any children born of the marriage would be reared in the Catholic faith.

Soon after the birth, the mother took the baby to her church and

had him baptized. This infuriated the plaintiff and no doubt entered into some of their discussions. However, it did not occur until long after the quarrels had begun. The two foregoing developments were the bases of plaintiff's cause of action, and with another dispute the cause of the trouble between the young couple.

The decree was not grounded on the religious differences of the parties but because of the arguments and conduct of defendant respecting the place where T. should live.

There is no doubt that immediately after the marriage the husband wanted a divorce. This was known to his parents. After the parties moved to the home of plaintiff's parents, they began to have arguments. The defendant, with typical mother instinct wanted her daughter T. to live with her. The impediment to this arrangement was the attitude of the father of plaintiff that he would not have T. in his home. This position, of course, he had full right to take, but that the support of T. was the stumbling-block does not seem to have been made known to the defendant. Indeed it need not have been insurmountable and there is no showing that any request was ever made of defendant that she provide the means to support T.

Notwithstanding defendant's expressed desire to have her daughter with her, plaintiff indicated no purpose or intention whatever to set up another establishment or to work out some method whereby the cost of her support could be paid to his father. Thus, arose a stalemate insofar as the defendant was concerned.

Defendant received $10.00 per month from the father of T. This had not been paid at all times, but it is obvious that defendant was able with such an amount as she did receive from the father of T. together with her own resources to have paid for the support of her daughter at all times prior to the birth of the child of the parties.

The effect of the conduct of the plaintiff respecting the three matters of difference was an ultimatum to the defendant either that she divorce him, renounce her religion or withdraw her insistence that she have T. live with them at the home of his parents.

There is no doubt that these arguments thus produced occurred frequently and were protracted and distressing to both parties. It is probable that as to the divorce and the religion the plaintiff was the aggressor. It may be as to the place of residence of T. the defendant was the aggressor.

If there was cruelty in this case, it was toward the parents of the plaintiff who were attempting to be helpful to both the parties, but, in the main, doing for their son what the defendant desired to do for her daughter. If there was any difference in the extent to which the parties were affected by the quarrels, it would appear that the defendant was more distressed than the plaintiff. The mother of plaintiff tells about how the wife would come downstairs in the middle of the night crying, visibly affected and, on one occasion, left the house and went into a haymow. At these times she would say that her husband was insisting on a divorce.

Bearing upon corroboration, the parents said that although they heard the arguments, inasmuch as their bedroom was downstairs and

the bedroom of the parties was upstairs, they, nor neither of them, could tell who started the discussions or what was said. Therefore, if it could be said that the plaintiff by his testimony made a prima facie case of extreme cruelty, the testimony of his father and mother is entirely inadequate to constitute corroboration upon any material element of extreme cruelty.

The cases cited by appellee as to the sufficiency of corroborative testimony may readily be distinguished from the facts here. In **Detrick v. Detrick, 33 Abs 155,** the plaintiff claimed and testified that her husband had struck her. As corroborative of this testimony, a neighbor said that the wife came running to her home in a nervous state with a lump on her forehead which grew in size while she remained there. Obviously, the plaintiff did not strike herself on the forehead and the fact that it was even then, when the neighbors saw her, swelling, certainly was corroborative of the fact that the wife had been struck. Likewise, **Kleinhenz v. Kleinhenz, 22 Abs 658,** where there was proof of ill treatment of the wife and it was held that the testimony of an individual living below the parties as to hearing screams of the wife at about the time that she had testified as to the ill treatment was corroborative of the mistreatment.

Here, in the first instance, there is no proof of extreme cruelty. Secondly, the corroboration is not forthcoming because neither the father nor the mother of the plaintiff knew the subject matter of the quarrels nor the conversations or the arguments, who started them or who was to blame in bringing them about, especially is this true inasmuch as the religious differences went out as a ground for the divorce.

It is basic that in every cause for a divorce, save possibly impotency, the one who is held to be the aggressor must be at fault. He or she must do something which is entirely improper and not justified by any circumstances then appearing. A divorce is never granted against an innocent party. Nor will a divorce be granted either party if both prove their right to a divorce.

It cannot be said that the wife in taking the position which she had full right to maintain, namely, that T. be permitted to live with her and the plaintiff was committing any act of extreme cruelty toward her husband. When the plaintiff married the defendant with full knowledge that T. was her child, it was but logical to expect that she would want the child to live with them and she so expressed herself at all times. This was not unusual and to insist upon it was in no sense improper. If it could not be accomplished by bringing the child to live with plaintiff's parents then he should have made arrangements for him and his wife to live someplace else.

Likewise, there can be no question on the testimony in this case that the husband agreed with full appreciation of what he was doing, that the child of the parties should be reared in the Catholic faith. When, then, the wife acted upon that promise, how can it be said that she committed extreme cruelty toward the defendant however it may have affected him. The trial judge was correct in refusing to so find.

Some blame seems to have been attached to the defendant because of her conduct with the plaintiff before their marriage. Obviously, this

improper conduct was chargeable equally to both the plaintiff and the defendant. She was no more an offender than he. Even if it could be said that his marriage to the defendant bore any badge of fraud, it was not in the case. The plaintiff did not charge fraud. The young people had gotten themselves into a situation which was difficult and frightening. In the course that they followed, they acted wisely. However, the plaintiff did not have to marry defendant; he could have stood on his rights to live apart from her and not make her his wife, but he may have subjected himself to a paternity suit with the incident embarrassment.

Even after this divorce action was instituted, plaintiff under oath charged that the child to which the defendant gave birth after the marriage was not his child. By agreement, the wife consented to a blood test and although the test is not among the files, it is conceded that its disclosure did not support the contention of plaintiff that he was not the father of the child.

The attitude of the husband toward the wife respecting support for her and for their child is unusual. It is testified and not denied that he never gave his wife one penny during the time they lived together, except $10.00 which she had given him and he returned to her. He bought her no clothing, no clothing for the child; gave her no money even when she was required to quit work because of her pregnancy, and compelled to resort to her own funds. Then, after the suit was instituted, he gave her nothing except $5.00 which he sent to her through his mother. Had she instituted a suit against the plaintiff on the ground of gross neglect of duty, she could have supported the charge. It is true that money matters were not the cause of any of the disagreements of the parties.

The situation of the parties is unfortunate and as it may be that their differences cannot be reconciled. However, that is not the basis for a divorce decree. Nor is the fact that the wife agreed that a divorce should be granted. There is a third party in every divorce action, the public. Divorce is a creature of statute and may be granted only upon proof of some cause of action created by the statute. The requisite proof does not appear.

The evidence in this case in the most favorable light to plaintiff does not constitute proof of extreme cruelty. The decree therefore is not only against the manifest weight of the evidence but is contrary to law.

The decree of divorce will be revoked. The support and custodial orders are not in controversy.

HORNBECK, J, concurs.
WISEMAN, J, not participating.