**JOHNSTON, a Minor, Plaintiff, v. JOHNSTON, Defendant.**

Common Pleas Court, Madison County.

No. 20486.   Decided May 27, 1957.

Richmond & Richmond, C. D. Richmond, of Counsel, London, for plaintiff.

Mayer & Leshy, Goldie K. Mayer, of Counsel, Columbus, for defendant.

## OPINION

By BAYNES, J.

This cause came on for trial on the petition and answer. Plaintiff alleged that defendant was guilty of gross neglect of duty and extreme cruelty without specification. Defendant denied the charges. Both parties and their counsel were present at trial. At the close of plaintiff's case defendant moved to dismiss the petition for failure of proof.

Plaintiff and three corroborative and two character witnesses testified. Defendant was not called as upon cross-examination. The charge of gross neglect of duty is not supported by satisfactory evidence. Neither are the elements of extreme cruelty, the principal one on which plaintiff relies we reluctantly elaborate. This for the reason is was in effect contended, on plaintiff's behalf, that not to grant plaintiff relief would have the effect of judicially approving immoral conduct. Further that it would leave plaintiff without a forum or means of relief.

Obviously these contentions assume certain proof, not necessarily well made, and begs the question. Neither counsel, orally or otherwise, cited any authority for their respective contentions, which too frequently happens. It is also true that there is no Ohio authority on the one issue on which it is claimed plaintiff should prevail, which is, that mere proof of acts cunnilingus and fellation, on mere suggestion by the defendant, entitles the complainant to a decree on ground of extreme cruelty.

The parties were married 9 July 1953 in an adjacent state where a "Marriage Mill" was in notorious operation. Plaintiff was then fifteen years of age and defendant twenty-three. They have one child born 12 May 1954. Neither of plaintiff's divorced parents knew of the marriage until afterward.

Plaintiff is normal physically and not without beauty. She has better than average intelligence, her school grades averaged "B." Defendant was unable to profit from further education after the sixth grade. He is also handicapped physically as a result of poliomyelitis which left the use of his right arm and leg impaired.

It might also be well to observe that plaintiff's attitude both on and off the witness stand was care free nor was she inhibited or embarrassed in the slightest by the nature of her testimony. On the other hand defendant's demeanor was that of a person defeated physically, mentally and spiritually.

Abnormal or unnatural coitus is not one of ten grounds for which a divorce may be granted under §3105.01 R. C. In Nelson on Divorce and Annulment 2d ed. v. 1, 284, Section 6.24 it is said that such demands are sometimes alleged as cruelty as going to establish such charge. It is also stated that such matters are proper for consideration but are difficult to prove to the satisfaction of the Court.

There was no attempt on plaintiff's behalf to establish more than the fact of cunnilingus and fellation. In order to establish that such acts

constitute extreme cruelty, we hold that it must be satisfactorily proved that the acts are against the will of the complaining party, that it is affirmatively shown to be detrimental to such party's mental or physical health so as to render the marital relationship intolerable or unendurable.

There is not a scintilla of evidence in the record to this effect. It might even be inferred by the repetition, from time to time, of cunnilingus that it was desired by the complainant and that the fellation was not without gratification to her. In any event it was at no time given as a cause of plaintiff's separation from her husband and one of the reasons for filing the suit.

Plaintiff testified that on 8 January 1957 she left her husband and child and was gone until 13 January 1957:

Q. What, if anything, happened when you returned to your mother's house on that Sunday?

A. I hadn't been home but about a half hour until my husband came to the house and knocked on the door and he came in and we talked things over and he promised me that he would get rid of the horses and pay the bills that we owed and I would come back to him and so I went back with him that night.

Q. How long did you stay with him?

A. Until I left in February.

Q. What brought about your leaving in February?

A. Well he didn't do the things that he promised to do so I left him.

This leaving took place on Friday, 1 February 1957. Plaintiff went to an elderly aunt's house. The aunt testified on plaintiff's behalf corroborating the fact that defendant called at her home on Sunday, February 3rd and made certain admissions which were but barely inferrable, if at all, as to fact of cunnilingus and fallation. Apparently some discussion later was had between plaintiff and her aunt out of defendant's presence for this testimony on final redirect examination appears:

Q. When did you first find out that sexual relations between you and your husband were other than what ordinary people, married people, have?

A. Well actually it was on the night that my husband came to my aunt's house.

Q. When was that?

A. That was in February.

Q. Up until that time you thought that you were—your sexual relations were perfectly normal, is that correct?

A. Yes.

Plaintiff testified that cunnilingus began in November 1953 while she was pregnant, which is difficult to believe. That on the average abnormal coitus occurred once out of each five or six times that coition was had. She testified that it was first suggested by the defendant but she admitted on cross examination that she told defendant she didn't want to become pregnant again, from which adverse inferences to plaintiff may be drawn.

Plaintiff was evasive on direct examination as to the fellation. At

the Court's insistence upon plaintiff answering the direct question she said, "never." However, on cross examination she first reaffirmed her denial but then evasively admitted she had. At the Court's insistence upon plaintiff answering the direct question she admitted the fellation.

We have examined fifteen of the cases cited under foot note 30, cum. sup. in Nelson on Divorce and Annulment, Section 6.24, above referred to, and §2905.44 R. C., defining sodomy. In Ohio fellation is construed to be an offense under the sodomy statute. It is probable, and there is authority that cunnilingus is not; State v. Forquer, 74 Oh Ap 293, 29 O. O. 439, 58 N E 2d 696.

In so far as the private moral relationship between husband and wife are concerned (as to either cunnilingus or fellation), it is certainly one that rests entirely in the minds and consciences of the two of them; Saffer v. Saffer, 42 Wash. 2d 298, 254 P 2d 746, 749.

In a case where the plaintiff wife complained of fellation against her will which continued over a span of nine years the court indicated that such a course of conduct, if not imperilling the wife's mental or physical health, or both, made her life unbearable; and was, in view of the corroboration found by the Court, justification for terminating the marriage. Maranto v. Maranto, 192 Md. 214, 64 A. 2d 144.

In a suit for divorce an element of extreme cruelty charge was that the husband subjected the wife to fellation over a two year period, against her will causing her extreme mental agony, undermining her health and making the marriage unendurable. The Court found that there was no categorical corroboration, but that in such case, corroboration could be found from surrounding facts and circumstances; Gilbert v. Gilbert, 24 N. J. Super. 473, 94 A. 2d 863. See also Grobart v. Grobart, 107 N. J. Eq. 446, 152 A. 858; aff'd 109 N. J. Eq. 129, 156 A. 420.

For the purposes of this opinion we have assumed corroboration of fact of the abnormality. Direct corroboration was lacking and it is difficult, if not impossible, to hold that it was well made from the surrounding facts and circumstances.

The facts of this case are clearly one for the application of the clean hands doctrine. It is not unfair to observe that the parties lack gentility.

It may well be that these parties find themselves in the same position and condition as the parties in Slyh v Slyh, 72 Abs 537, 544, 135 N. E. 2d 675, where the Court said:

"The situation of the parties is unfortunate and it may be that their differences cannot be reconciled. However, that is not the basis for a divorce decree. . . . There is a third party in every divorce action, the public. Divorce is a creature of the statute and may be granted only upon some proof of some cause of action created by the statute."

We have considered this matter on our trial notes and a transcript of the plaintiff's testimony of fifty-three pages which the Court Reporter was directed to furnish the Court. In passing on the motion we have given plaintiff's case the benefit of all reasonable and favorable inferences, as we are required to do. This was not made any easier by plaintiff's demonstrated lack of respect for the truth.

The Court has prepared and filed its own entry, dismissing the petition at plaintiff's costs.