[Cite as *DiDonato v. DiDonato*, 2016-Ohio-3129.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STEPHEN J. DiDONATO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2015 AP 09 0055 |
| CHRISTINA DiDONATO | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No.  2013 TC 07 0288


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      May 23, 2016


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

DEBORAH GREENHAM                        MICHAEL A. HUTH
Post Office Box 711                     Post Office Box 17
New Philadelphia, Ohio  44663           Bolivar, Ohio  44612

*Wise, J.*

{¶1}    Appellant Christina Huth DiDonato appeals from the decision of the Court of Common Pleas, Tuscarawas County, finding her in contempt of court upon a post-decree motion to show cause filed by Appellee Stephen DiDonato, her former spouse. The relevant facts leading to this appeal are as follows.

{¶2}    Appellant Christina Huth DiDonato and Appellee Stephen DiDonato were married in September 2001 in Florida. They are the parents of two minor children: D.D., born in 2004, and P.D., in 2007.

{¶3}    On July 2, 2013, Appellee Stephen filed a complaint for divorce. Appellant filed an answer and counterclaim on July 19, 2013. Via a magistrate's order on August 8, 2013, Appellant Christina was named the temporary residential parent and legal custodian of D.D. and P.D.

{¶4}    On April 8, 2014, the parties were granted a divorce pursuant to an agreed entry. Appellant Christina was designated the sole residential parent and legal custodian of the two children, subject to visitation and parenting rights of Appellee Stephen. The agreed entry also specifically provided, *inter alia*, that "the parties agree that they will discuss and cooperate on matters relating to the children's welfare, health and education, and each party will encourage the child to respect, honor, and love the other party."

{¶5}    However, just one month later, on May 7, 2014, appellee filed a motion to modify parental rights and responsibilities, requesting that he be named the residential and legal custodian of D.D and P.D. based upon a change in circumstances. On May 23, 2014, the magistrate issued an interim order ordering no texting between the parents

and ordering any non-emergency contact to be conducted through the court's "Family Wizard" communication system.

{¶6} The parties thereafter filed numerous motions, including appellee's motion for designation of a public place for exchange of the children, appellant's motion for right of first refusal to watch the children, and appellee's motion for an immediate oral hearing.

{¶7} On July 18, 2014, following a hearing, the magistrate entered an interim order stating that both parties could not contact the other party's childcare provider unless there is an emergency and finding there is no right of first refusal for child care. Appellant subsequently filed a motion to set aside said magistrate's order.

{¶8} On August 15, 2014, the magistrate issued an order directing the continued parental exchange of the children between the parties at the Marathon Station in Strasburg and ordering appellant to deliver the children to the New Philadelphia Burger King for football practice or games. The magistrate further ordered appellee to give appellant, through the Family Wizard system, the names and numbers of the childcare providers. She also stated appellant was not to contact said providers except in an emergency. Finally, the magistrate ordered that neither party should make any medical appointments that would occur during the other party's parenting time.

{¶9} On August 19, 2014, appellee filed an "*ex parte* emergency motion" regarding schooling for D.D. and P.D. Specifically, appellee sought an emergency order for the children to remain in the New Philadelphia school system rather than transfer to the Tuscarawas Valley school system. After conducting a phone conference with both attorneys and the guardian ad litem, the magistrate issued an order on August 19, 2014

ordering the children to remain in New Philadelphia schools. The magistrate further set this issue for a full hearing on August 25, 2014.

{¶10} On August 22, 2014, appellant filed an emergency motion for stay and objection to the *ex parte* decision. The magistrate denied appellant's motion for an emergency stay on August 25, 2014. The magistrate then conducted a full hearing over the course of August 25, 26, 27, and September 4, 2014.

{¶11} In an order issued September 17, 2014, the magistrate found appellant had admitted she unilaterally made the decision regarding school transfer, despite the prior agreed divorce entry requiring the parties to "discuss" and "cooperate" concerning the children's education. The magistrate ultimately ordered the children to remain in the New Philadelphia schools pending resolution of appellee's motion to modify parental rights. Appellant filed a motion to set aside the September 17, 2014 order; however, she later withdrew the motion.

{¶12} Beginning in October 2014, the magistrate held a hearing on appellee's motion to modify parental rights. The hearing continued to several dates in November and concluded on December 9, 2014.

{¶13} On February 13, 2015, following several hearings, the magistrate issued a decision, with forty-one findings of fact. The magistrate, among other things, determined appellee's home should be the residential home for school purposes, and that he should make all educational decisions for the children.

{¶14} The magistrate issued a clarification of her February 13th rulings on February 19, 2015. The magistrate therein stated each parent shall be the residential parent for the week the children are with them; appellee would be the custodial parent

for school purposes; and appellant would not be the custodial parent for medical purposes.

**{¶15}** Appellant and appellee each filed objections to said magistrate's decision. In addition, on July 10, 2015, appellant filed supplemental objections to the following magistrate's decisions: February 13, 2015, August 19, 2014, and September 17, 2014.

**{¶16}** On April 28, 2015, appellant's former counsel withdrew from representation, and appellant's present counsel thereupon entered a notice of appearance.

**{¶17}** The trial court issued a decision on the parties' objections on July 22, 2015. The trial court also vacated the magistrate's February 19, 2015 "clarification" order. The trial court also found appellant's objections to the August 19, 2014 and September 17, 2014 magistrate's orders were untimely. It further found appellant's constitutional rights had not been violated and it rejected appellant's claim regarding hearsay evidence. The trial court also modified several of the magistrate's findings of fact and conclusions of law. Based upon the findings of fact and conclusions of law, the trial court granted appellee's motion to modify and named appellee as residential parent and legal custodian of the children. The trial court further found appellee should make all educational and medical decisions for the children.

**{¶18}** Additional proceedings took place in July, August, and September 2015, the details of which we need not recite for purposes of this appeal.

**{¶19}** Appellant appealed to this Court regarding the July 22, 2015 decision to change residential parent status to appellee, as well as a clarification entry issued by the trial court on September 2, 2015. She raised five assigned errors, including the claim that the trial court had erred in finding a change of circumstances pursuant to R.C.

3109.04(E). On April 11, 2016, we affirmed the trial court's decisions. *See DiDonato v. DiDonato*, 5th Dist. Tuscarawas No. 2015 AP 07 0042, 2016-Ohio-1511.

{¶20} In the meantime, on March 12, 2015, appellee had filed a motion for contempt regarding *inter alia* the public exchange of the children and the doctor's appointments of the children. A partial hearing took place on April 23, 2015, with appellant being represented by her former counsel. Appellant's present counsel appeared for the next hearing on May 8, 2015, without her client, presented no witnesses or evidence, and declined to cross-examine appellee, stating she was not prepared to participate. A magistrate's decision was issued on May 12, 2015, finding appellant in contempt "for refusing to meet in Strasburg to exchange the children, for making a doctor's appointment during [appellee's] time with the children, for contacting [appellee's] child care provider and for texting [appellee] for non-emergencies (snow days)." Magistrate's Decision at 5.

{¶21} Appellant objected to the decision on May 28, 2015.

{¶22} On September 2, 2015, the trial court adopted the May 28, 2015 magistrate's decision with some modification. However, the above contempt findings were approved, except as to the grounds of texting by appellant. Appellant was sentenced to sixty days in jail, suspended upon compliance with certain purge provisions, including payment of a portion of attorney fees and litigation costs.

{¶23} Appellant filed a notice of appeal on September 25, 2015. She herein raises the following four Assignments of Error:

{¶24} "I. THE COURT OF COMMON PLEAS ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND APPELLANT, CHRISTINA DIDONATO[,] IN

CONTEMPT 'FOR REFUSING TO MEET IN STRASBURG TO EXCHANGE THE CHILDREN.'

{¶25} "II.    THE COURT OF COMMON PLEAS VIOLATED CHRISTINA DIDONATO'S FUNDAMENTAL RIGHTS AS A CUSTODIAL PARENT, WHEN IT FOUND APPELLANT, CHRISTINA DIDONATO[,] IN CONTEMPT 'FOR REFUSING TO MEET IN STRASBURG TO EXCHANGE THE CHILDREN.'

{¶26} "III. THE COURT OF COMMON PLEAS ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND APPELLANT, CHRISTINA DIDONATO[,] IN CONTEMPT 'FOR MAKING A DOCTOR'S APPOINTMENT DURING STEPHEN DIDONATO'S TIME WITH THE CHILDREN.'

{¶27} "IV. THE COURT OF COMMON PLEAS ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND APPELLANT, CHRISTINA DIDONATO[,] IN CONTEMPT FOR 'CONTACTING STEPHEN DIDONATO'S CHILDCARE PROVIDER.'"

I.

{¶28} In her First Assignment of Error, appellant contends the trial court erred in finding her in contempt for refusing to follow court orders regarding parental exchanges in Strasburg, Ohio. We disagree.

{¶29} "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph two of the syllabus. Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. *Wadian v. Wadian*, 5th Dist. Stark No. 2007CA00125, 2008-Ohio-5009, ¶ 12, citing *In re Mittas*, 5th Dist. Stark No.1994 CA

00053, 1994 WL 477799. Interference with visitation is typically redressed in family courts via civil contempt. *See, e.g., Montgomery v. Montgomery,* 4th Dist. Scioto Nos. 03CA2923, 03CA2925, 2004–Ohio–6926, ¶ 13, citing *Mascorro v. Mascorro*, 2nd Dist. Montgomery No. 17945, 2000 WL 731751. "A finding of civil contempt does not require proof of purposeful, willing, or intentional violation of a trial court's prior order." *Townsend v. Townsend,* 4th Dist. Lawrence No. 08CA9, 2008–Ohio–6701, ¶ 27, citing *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 472 N.E.2d 1085.

**{¶30}** In the case *sub judice*, the record indicates further contention arose between the parties when appellant and/or appellee attempted to coordinate visitation and child activity times on their own, over and above the court-ordered schedule. This included times for D.D. and P.D. to play baseball and for P.D. to attend CCD classes arranged by appellee at the Immaculate Conception Catholic Church in Dennison, Ohio. Appellant began insisting that the exchange point in such instances be in Bolivar, Ohio, not Strasburg.

**{¶31}** The key language of the August 15, 2014 magistrate's order is simply as follows: "As the parties have been using the Marathon Station in Strasburg, it is **Ordered** that they continue to use that as the exchange place." (Emphasis in original). But appellant presently maintains she thought the magistrate's order of August 15, 2014 meant that only exchanges for *court-ordered* visitation were to be in Strasburg. However, we note the above-quoted language is placed under a section of the five-page order with the generic heading "Public Exchange of the Children." We also note the magistrate, in subsequently interpreting her orders, merely stated she could "accept that *maybe* that would've been interrupted [sic] in two different ways." Tr. at 53. As appellee correctly

responds, nowhere does the August 15, 2014 magistrate's order state the Strasburg Marathon exchange locale is limited to court-ordered visitation purposes only.

**{¶32}** "As an appellate court, we must be cognizant that a domestic relations court is often tasked with providing a forum for peaceable redress of disputes in the complex realm of post-decree litigation ***." *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020, ¶ 32. The authority and proper functioning of the court is the primary interest involved in a contempt proceeding and, as such, great reliance should be placed upon the discretion of the trial judge. *Rooney v. Rooney*, 5th Dist. Stark No. 2014CA00165, 2015-Ohio-1852, ¶ 15 (additional citations omitted).

**{¶33}** Under the circumstances presented, we hold the trial court could have properly found, within its discretion, that appellant's actions involving the exchange of the children constituted a form of disrespect or obstruction toward the court's functioning so as to warrant a contempt finding. *See Windham Bank, supra,* paragraph one of the syllabus.

**{¶34}** Appellant additionally contends that the contempt finding against her should have been barred because of appellee's "unclean hands." The doctrine of clean hands is based on the maxim of equity that provides "he who comes into equity must come with clean hands." *Seminatore v. Climaco, Climaco, Lefkowitz & Garofoli Co., L.P.A.,* Cuyahoga App.No. 81568, 2003–Ohio–3945, ¶ 26, citing *Marinaro v. Major Indoor Soccer League* (1991), 81 Ohio App.3d 42, 45, 610 N.E.2d 450. The application of the doctrine is at the discretion of the trial court. *See Slyh v. Slyh* (1955), 72 Ohio Law Abs. 537, 135 N.E.2d 675.

**{¶35}** In essence, appellant urges that because appellee unilaterally signed up both boys to play little league baseball and enrolled P.D. in CCD classes, he violated the requirement of discussion and cooperation as set forth in the divorce decree, and he should not benefit from a contempt finding against her. However, in order to prevail on this point, appellant must show that appellee's conduct "constitute[d] reprehensible, grossly inequitable, or unconscionable conduct, rather than mere negligence, ignorance, or inappropriateness." *See Wiley v. Wiley,* 3d Dist. No. 9-06-34, 2007-Ohio-6423, at ¶ 15.

**{¶36}** While we do not seek to condone appellee's allegedly unilateral decisions in involving the children in extracurricular activities, upon review we are unpersuaded that the trial court's decision to refrain from reliance on the clean hands doctrine on this issue constituted an abuse of discretion in this instance.

**{¶37}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶38}** In her Second Assignment of Error, appellant contends she was deprived of her fundamental rights as a parent when the trial court found her in contempt for refusing to follow court orders regarding parental exchanges in Strasburg. We disagree.

**{¶39}** A parent has a fundamental liberty interest in the care, custody, and management of his or her child. *See In re Gower/Evans Children,* 5th Dist. Tuscarawas No. 06AP060034, 2006–Ohio–5676, ¶ 28, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. However, "'it is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham,* 59 Ohio

St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.* (Fla.App. 1974), 300 So.2d 54, 58.

**{¶40}** Appellant appears to make the unfounded argument that the contempt finding was a violation of due process of law for want of a "best interest" analysis by the trial court under R.C. 3019.04. *See* Appellant's Brief at 25. We thus surmise she is attempting a back-door challenge to the trial court's prior decision to establish appellee-father as the custodial parent of D.P. and P.P., a decision which is not the subject of this appeal. Appellant's obfuscation of the issues notwithstanding, we emphasize that the basic purpose of civil contempt proceedings is to compel compliance with a court's order. *See Natl. Equity Title Agency, Inc. v. Rivera* (2001), 147 Ohio App.3d 246, 252, 770 N.E.2d 76.

**{¶41}** Upon review, we hold appellant's fundamental rights under the Fourteenth Amendment were not implicated by the trial court's contempt finding.

**{¶42}** Appellant's Second Assignment of Error is overruled.

III.

**{¶43}** In her Third Assignment of Error, appellant contends the trial court erred in finding her in contempt for scheduling a medical appointment for the children during appellee's parenting time. We disagree.

**{¶44}** The incident at issue is appellant's scheduling of an appointment with a doctor in Cleveland at 11:00 AM on Friday, February 20, 2015, one of appellee's parenting days prior to the order of July 22, 2015 changing custody. This was done by appellant despite language in the August 15, 2014 magistrate's order forbidding each

party from scheduling such appointments to occur "during the other party's possession of the children."

**{¶45}** Appellant seeks to justify her actions in setting the appointment on the theory that appellee was not supposed to have had "possession" of the children on February 20, 2015, because it was a scheduled school day.[1] However, "[p]ossession is commonly understood as the 'right under which one may exercise control over something.' " *Ferreri v. Ferreri*, 11th Dist. Trumbull No. 2013-T-0006, 2013-Ohio-4314, ¶ 34, quoting *Black's Law Dictionary* 1201 (8th Ed. 2004). We find the physical presence of the children in their school (albeit disrupted in this instance by a snow day) would not have altered the legal status of appellee during his former court-ordered period of parenting time under these circumstances, and the trial court therefore did not abuse its discretion in its contempt finding against appellant as to making the medical appointment.

**{¶46}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶47}** In her Fourth Assignment of Error, appellant maintains the trial court erred in finding her in contempt for attempting to contact appellee's child care provider in a non-emergency event without consent, in contravention of prior orders of the court. We disagree.

---

[1] In actuality, the day in question turned out to be a "snow day," meaning the children were not in school. It also appears appellee initially agreed to let appellant take the children to the appointment, but appellant then demanded that he leave work early to pick them up at the doctor's office. *See* Tr. at 64-65.

**{¶48}** The record before us reveals appellee testified that appellant informed him through text messages that she would be contacting his childcare provider. *See* Tr. at 45-46, 68, 76-77. He also told the court that appellant engaged in contact by physically taking the children to his childcare provider's home. Tr. at 46-47, 77. At the hearing on the issue, appellant provided no direct testimonial response to these allegations, as she did not appear for the second hearing date and her present attorney notified the court at that time that she had had limited time to prepare. It is well-established that the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. *See, e.g., Taralla v. Taralla,* Tuscarawas App. No. 2005 AP 02 0018, 2005-Ohio-6767, ¶ 31, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

**{¶49}** Appellant's Fourth Assignment of Error is therefore overruled.

**{¶50}** For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0427