[Cite as *GMAC Mtge., L.L.C., v. Jackson*, 2013-Ohio-2150.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MARION COUNTY

GMAC MORTGAGE LLC,

    PLAINTIFF-APPELLEE,

                                CASE NO. 9-13-01

    v.

STANLEY JACKSON,

    DEFENDANT-APPELLANT,
    -AND-                                O P I N I O N

MARION COUNTY TREASURER, ET AL.,

    DEFENDANTS-APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 11CV0349

**Judgment Affirmed**

Date of Decision: May 28, 2013

APPEARANCES:

    *Daniel R. Gurtner* for Appellant

    *David A. Wallace and Karen M. Cadieux* for Appellee, GMC
    Mortgage

**SHAW, J.**

{¶1} Defendant-appellant Stanley Jackson ("Jackson"), appeals the November 2, 2012, judgment of the Marion County Common Pleas Court granting plaintiff-appellee GMAC Mortgage, LLC ("GMAC") summary judgment in a foreclosure action.[1]

{¶2} On May 23, 2011, GMAC filed a complaint for foreclosure against Jackson. (Doc. 1). The property at issue was located at 1566 Kingwood Circle in Marion, Ohio. In the complaint, GMAC alleged that Jackson executed a mortgage in connection with the execution of a Note on the property, and that the parties intended the Mortgage to attach the entire fee simple interest in the property. (*Id.*) GMAC contended that Jackson was in default, and that by reason of default GMAC was entitled to a decree foreclosing the mortgage. (*Id.*)

{¶3} Jackson did not file a timely answer to the complaint.

{¶4} On September 30, 2011, GMAC filed a "motion for default judgment." (Doc. 14).

{¶5} On October 17, 2011, Jackson filed a "motion for leave to file answer instanter." (Doc. 17). The actual answer was not attached to the motion.

---

[1] The complaint for foreclosure was also filed against Ronita Jackson, Jackson's wife, and the Marion County Treasurer. (Doc. 1). Along with Jackson, Ronita and the Marion County Treasurer were parties to the action in the trial court. However, Jackson is the only person that appealed the decision, and his is the only name on the Notice of Appeal.

{¶6} Also on October 17, 2011, Jackson filed a memorandum contra to GMAC's motion for default judgment. (Doc. 18).

{¶7} Subsequently, on November 7, 2011, GMAC filed a notice of withdrawal of its motion for default judgment. (Doc. 21).

{¶8} On January 11, 2012, GMAC filed a motion for summary judgment, arguing that there was no dispute that the Jacksons were in default and that the default had not been cured. (Doc. 23). Along with the motion, GMAC filed the affidavit of Katrina Jordan, a "duly authorized signer of GMAC" with "access to business records relating to mortgage loans that are maintained in the ordinary course of the regularly conducted activity of mortgage loan servicing, including [Jackson's] mortgage loan." (*Id*.) Jordan averred that Jackson defaulted under the Note and Mortgage and had failed to cure the default.[2] (*Id*.)

{¶9} On January 26, 2012, Jackson filed a memorandum contra to GMAC's motion for summary judgment, arguing that MERS did not have legal ability to assign the mortgage, that GMAC was not a real party in interest and thus did not have standing, that GMAC's affidavit assumes Jackson's signature on the note, and that GMAC and Jackson were discussing a workout option and therefore summary judgment was not appropriate at the time. (Doc. 26).

---

[2] The amount of unpaid principal was $174,971.08, from November 1, 2010.

**{¶10}** On February 1, 2012, GMAC filed a reply to Jackson's memorandum contra, arguing that Jackson had admitted each allegation in the complaint by failing to answer, that MERS had the authority to assign its right to foreclosure pursuant to *Countrywide Home Loans Serv., L.P. v. Shifflet*, 3d Dist. No. 9-09-31, 2010-Ohio-1266, that GMAC's affiant need not have "witness[ed]" Jackson's signature, and that efforts at settlement had no bearing on GMAC's motion for summary judgment. (Doc. 27).

**{¶11}** On February 10, 2012, Jackson filed a sur-reply, claiming that the trial court had not yet ruled on Jackson's motion for leave to file an answer instanter and therefore should deny GMAC's motion, that GMAC's affiant did not have personal knowledge regarding Jackson's signature on the note and mortgage, that the facts in *Shifflet* did not mirror those in this case, and that the process of attempting a loan modification was not an admission that GMAC was the real party in interest. (Doc. 28). Attached to this sur-reply was the affidavit of Jackson, which stated, *inter alia*, that Jackson had contacted GMAC to discuss the possibility of a loan modification, and that Jackson was advised by an employee of GMAC to miss payments in order to qualify for the loan modification process. (Doc. 28).

**{¶12}** On February 22, 2012, GMAC filed a response to the sur-reply, arguing that until the trial court permitted Jackson's answer, the allegations in the

complaint were deemed admitted, that *Shifflet* was not distinguishable, that there was no provision in the Marion County Court of Common Pleas rules that allowed for a "sur-reply," and that Jackson's own affidavit suggested that GMAC was, in fact, the party in interest. (Doc. 29).

{¶13} On April 12, 2012, the court filed a notice of hearing on the motion for leave to file an answer and on the motion for summary judgment. (Doc. 32).

{¶14} On May 14, 2012, a hearing was held, wherein the court granted Jackson's motion for leave to file an answer. (Doc. 33). The court also stated that GMAC's summary judgment motion would remain pending, that the court would not rule on the motion until after Jackson filed an answer, and that the court would not rule on the motion at all before July 1, 2012, to allow for settlement negotiations to continue. (*Id.*)

{¶15} On May 29, 2012, Jackson filed an answer, claiming three defenses and seven affirmative defenses. (Doc. 34).

{¶16} On August 23, 2012, the court filed an entry on the motion for summary judgment. (Doc. 35). In the entry, the court found that summary judgment was appropriate on some, but not all, of the issues before the court. (*Id.*) Specifically, the court found that the *Shifflet* case was controlling, and MERS did have the authority to assign the mortgage. (*Id.*) Next, the court found that GMAC was entitled to summary judgment on the issue of whether Jackson signed the

promissory note, as Jackson admitted as much in his answer. (*Id.*) In addition, the court found that GMAC was entitled to summary judgment on the issue of a workout option, as summary judgment would not prevent the parties from continuing to try to find a workout option. (*Id.*) However, the court did find that there remained a genuine issue of material fact as to whether GMAC was the holder of the note in question. (*Id.*) The court found that Katrina Jordan's affidavit made no such statement. (*Id.*) Therefore, summary judgment was not awarded on this issue. (*Id.*)

{¶17} On September 26, 2012, GMAC filed a notice of filing an endorsed note, and certified copies of the mortgage and assignment of mortgage. (Doc. 36). Those documents were filed with the court. (*Id.*)

{¶18} On September 27, 2012, GMAC filed a motion for leave to file a renewed summary judgment motion. (Doc. 37). On October 3, 2012, the trial court granted that motion. (Doc. 39).

{¶19} On October 3, 2012, GMAC filed a renewed motion for summary judgment, arguing that GMAC was the holder of the note and of the mortgage as evidenced by their new filings. (Doc. 40). The affidavit of Heather Mechalas was attached to the motion, averring, *inter alia*, that Jackson signed the note and that GMAC was the holder of the note. (Doc. 41).

{¶20} Jackson did not file a memorandum in opposition to the renewed motion for summary judgment.

{¶21} On November 2, 2012, the trial court filed its judgment entry and decree in foreclosure. (Doc. 42). In its entry, the court found that GMAC was the holder of the note, that Jackson executed the note referenced in the complaint, that Jackson promised to make monthly payments and that Jackson failed to do so. (*Id.*) The court found the Note and Mortgage were in default, that there were no genuine issues of material fact remaining, and that GMAC was entitled to judgment as a matter of law. (*Id.*)

{¶22} It is from this judgment that Jackson appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WHEN APPELLEE ACTED IN BAD FAITH AND MISREPRESENTED TO APPELLANT THAT HE SHOULD MISS PAYMENTS INTENTIONALLY SO HE COULD PARTICIPATE IN A LOAN MODIFICATION PROGRAM.**

{¶23} In Jackson's assignment of error, he argues that the trial court erred in granting GMAC's motion for summary judgment. Specifically, Jackson claims that GMAC made statements to Jackson that Jackson should intentionally miss mortgage payments, and that therefore GMAC brought this action with "unclean

hands." Jackson does not, however, renew the arguments he made in his original memorandum contra to GMAC's motion for summary judgment.

{¶24} Initially, we note that an appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley–Slowinski v. Superior Spinning & Stamping Co.*, 128 Ohio App.3d 360, 363 (6th Dist.1998). A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *see Horton v. Harwick Chem. Corp*., 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus.

{¶25} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, syllabus (1988). The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-

moving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

**{¶26}** The doctrine of clean hands is based on the maxim of equity that provides "he who comes into equity must come with clean hands." *Seminatore v. Climaco, Climaco, Lefkowitz & Garofoli Co., L.P.A.,* 8th Dist. No. 81568, 2003-Ohio-3945, ¶ 26, citing *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45 (9th Dist.1991). The application of the doctrine is at the discretion of the trial court. *Nowinski v. Nowinski*, 5th Dist. No. 10 CA 115, 2011-Ohio-3561, ¶ 24 citing *Slyh v. Slyh*, 72 Ohio Law Abs. 537, 135 N.E.2d 675 (2nd Dist.1955). "For the doctrine of unclean hands to apply, the offending conduct must constitute reprehensible, grossly inequitable, or unconscionable conduct, rather than mere negligence, ignorance, or inappropriateness. * * * Furthermore, 'the unclean hands doctrine should not be imposed where a party has legal remedies available to address an opposing party's asserted misconduct.'" *Deutsche Bank National Trust Co. v. Pevarski*, 4th Dist. No. 08CA52, 2010-Ohio-785, ¶ 24, quoting *Safranek v. Safranek*, 8th Dist., No. 80413, 2002-Ohio-5066, ¶ 20.

**{¶27}** On appeal, Jackson claims that the "unclean hands" doctrine should have prevented summary judgment in favor of GMAC. GMAC counters by arguing first that Jackson waived this argument by not asserting it in his

responsive memorandums to the trial court. While making no finding as to whether Jackson sufficiently raised the argument in his memorandums in opposition to summary judgment, we elect to address the assignment on its merits.

{¶28} In arguing that GMAC had unclean hands, Jackson contends in his brief to this Court that, "[p]laintiff GMAC, LLC represented to Mr. Jackson that he should intentionally miss his contractually obligated mortgage payments. Mr. Jackson, mistakenly believing that the advice he was receiving from the Plaintiff's employee was representative of Plaintiff's policy followed that advice to his detriment. If Plaintiff's employee did not give this advice to Mr. Jackson, he would not have missed the payments that he did and Plaintiff would not have had to file a foreclosure action." (Appt. Br. at 8).

{¶29} Although Jackson does not specifically cite documents to support his claim on appeal, it is clear his argument is referencing an affidavit Jackson filed along with his sur-reply to GMAC's original motion for summary judgment. In that affidavit, Jackson averred the following:

> **1.    Early in 2010, Defendant contacted Plaintiff directly to discuss the possibility of a loan modification.**
> **2.    Defendant was advised by an employee of Plaintiff's to miss payments in order to qualify for their modification process.**
> **3.    At this time, Defendant was current with the mortgage, but took the advice of Plaintiff's employee and missed three payments.**
> **4.    Defendant entered into the modification process in an attempt to work out a loan modification with Plaintiff.**

5.   After two months passed, Defendant tried to make a payment and was unable to make payment because Defendant was locked out of the online system.

6.   At that point, Defendant called Plaintiff and was informed that the foreclosure process had started on the property. A payment of $7,500 was needed to cure the deficit.

7.   Defendant was not in a position to pay the entire amount demanded by Plaintiff and continued the modification process with Plaintiff. Plaintiff has rejected Defendant several times for a host of different reasons.

8.   Defendant was told he had insufficient income, but Plaintiff would not disclose the amount of income required to complete the loan modification.

9.   Defendant followed the instructions given by Plaintiff on each occasion, but was rejected for unknown and unidentified reasons by Plaintiff.

10.   The loan modification documentation stated the loan modification paperwork needed to be faxed by January 4, 2012.

11.   Defendant faxed the paperwork on January 3, and called Plaintiff on January 4.

12.   Defendant was told the document would be late because of Plaintiff's 48-hour window to receive faxed documents.

13.   Plaintiff's employee did not inform Defendant of the 48-hour window in a prior conversation. Furthermore, Plaintiff's employee confirmed with Defendant that sending the paperwork the day before the January 4 deadline would be acceptable.

14.   Two weeks later, Plaintiff informed Defendant that the paperwork was rejected and Defendant would have to resubmit the package again. Defendant has received inconsistent instructions from Plaintiff's employees. The instructions for the modification process vary from employee to employee, making Defendant's attempts at modification futile.

15.   Furthermore, Plaintiff's employee informed Defendant that the modification paperwork would be processed in 30 days, and would inform Defendant of the decision within that 30-day period.

16.   Plaintiff did not process the paperwork within this period previously stated and promised by Plaintiff.

17.   As a result, Plaintiff filed an unnecessary and premature foreclosure action against Defendant.

(Doc. 28).

**{¶30}** At the outset of our discussion, we would note that there are issues with Jackson's affidavit, especially regarding the specificity of the averments. To begin with, Jackson states that he contacted GMAC in "early 2010" and that he then missed three mortgage payments. However, Jackson did not go into default until November of 2010, and GMAC did not file a complaint for foreclosure until May 23, 2011, over seven months—and thus seven missed payments—after the initial default, and far removed from "early 2010." In addition, Jackson neither explicitly stated when he talked to a GMAC employee, nor provided the name of the employee that he purportedly talked to. Similarly, Jackson produced no documentation supporting his claim that he talked to the bank at all. Furthermore, it seems somewhat implausible that a bank would advise a client in good standing on his mortgage to miss payments.

**{¶31}** However, even assuming all of Jackson's averments are true, Jackson states that he was advised to miss payments in order to qualify for the loan modification *process*. Jackson never states that he was affirmatively told by a bank employee that he would qualify for an actual loan modification. In fact, Jackson's affidavit makes clear that the bank did engage in the loan modification *process* with Jackson. Jackson's affidavit states that he was rejected for loan modification for having insufficient income, and then later for unknown or

unidentified reasons.  Thus Jackson admits that the bank did actually engage in the loan modification *process* with him, the outcome just was not favorable for Jackson.

**{¶32}** Next, we would point out that nowhere in Jackson's affidavit does he state that GMAC ever agreed to allow Jackson to stop making mortgage payments, negating their prior agreement.  Moreover, nowhere in Jackson's affidavit does he state that GMAC ever affirmatively stated that Jackson would qualify for loan modification.

**{¶33}** The Fifth District considered a similar argument in *Key Bank Nat'l Assoc. v. Bolin*, No. 2010CA00285, 2011-Ohio-4532, wherein Bolin argued that the bank was estopped from seeking equitable relief because of the doctrine of unclean hands, on the basis that the bank would not allow Bolin to participate in a loan modification program.  *Bolin*, at ¶ 35.  Ultimately the court held that

> **[t]he mortgage document * * * contains a clause that permits the lender to accept payments from the borrower but that does not waive any of the borrower's obligations under the mortgage or prevent the lender from insisting on the strict performance of the mortgage obligations.  Under the terms of the mortgages, Appellee was not required to allow Appellant to participate in loan modification.  We find Appellant has failed to provide Civ.R. 56 evidence to demonstrate a genuine issue of material fact to allow reasonable minds to conclude otherwise.**

*Id*. at ¶ 37.

{¶34} We find *Bolin* persuasive. In this case, there was a similar clause in the mortgage document, and GMAC never agreed to waive payment. (Doc. 36). Jackson does not claim or point to any evidence to suggest that GMAC agreed to waive any payments, and thus he has no defense to being in default on the mortgage.

{¶35} Based upon the lack of specificity in the affidavit, and Jackson's lack of proof of any agreement to waive payment, we cannot find that the "unclean hands" doctrine applies here, or that Jackson's affidavit gives rise to a genuine issue of material fact. Accordingly, for all of the foregoing reasons we cannot find that the trial court erred in awarding summary judgment to GMAC. Therefore, Jackson's assignment of error is overruled.

{¶36} For the foregoing reasons the November 2, 2012, judgment of the Marion County Common Pleas Court is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**