[Cite as *Wilson v. Jones*, 2013-Ohio-4638.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

AMY WILSON,

    PLAINTIFF-APPELLANT,            CASE NO. 13-13-06

    v.

WILLIAM JONES,                   O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Seneca County Common Pleas Court
Juvenile Division
Trial Court No. 20270036

Judgment Affirmed

Date of Decision: October 21, 2013

APPEARANCES:

    *Shane M. Leuthold* for Appellant

    *William Jones,* Appellee

**PRESTON, P.J.**

{¶1} Plaintiff-appellant, Amy Wilson, appeals the judgment of the Seneca County Court of Common Pleas, Juvenile Division finding her in contempt. For the reasons that follow, we affirm.

{¶2} Wilson and William Jones have a minor child together. (Dec. 9, 2002 JE, Doc. No. 26). The parties entered an agreement on the record designating Wilson as the minor child's residential parent and providing Jones with specified visitation periods and other visitation periods as provided by Local Rules. (*Id.*); (June 11, 2003 JE, Doc. No. 38).

{¶3} On July 26, 2011, Jones filed a motion for contempt on the basis that Wilson interfered with his court-ordered visitation, removed the minor child from the "country," and changed the minor child's religion without consulting him. (Doc. No. 48).

{¶4} On October 18, 2011, the motion came on for hearing before a magistrate, and the magistrate found Wilson in contempt for denying Jones visitation. (Oct. 26, 2011 JE, Doc. No. 63). The magistrate recommended that the trial court impose a ten-day jail sentence suspended upon conditions that: (1) Wilson make-up the missed visitation time; and, (2) Wilson reimburse Jones $163, the cost of filing the contempt motion, payable to the Court within 30 days of the file-stamped date of the entry. (*Id.*). The magistrate notified Wilson that if any of

the conditions were not met, the trial court would impose the suspended jail sentence. (*Id.*). The magistrate further notified Wilson that she could purge the contempt by paying $250 by November 23, 2011, which sum would be forwarded to Jones. (*Id.*). On October 26, 2011, the magistrate's decision was filed, and the trial court adopted it as its judgment that same day. (*Id.*).

{¶5} On January 24, 2013, Jones filed a second motion for contempt alleging that Wilson failed to comply with the court's October 26, 2011 orders, Wilson interrupted his visitation time, and Wilson removed the minor child from the state without his prior consent. (Doc. No. 65).

{¶6} On February 15 and March 4, 2013, the motion came on for hearing before the trial court. (Mar. 15, 2013 JE, Doc. No. 77). The trial court found Wilson in contempt and imposed three of its previously ten suspended jail days. (*Id.*). The trial court fined Wilson $250 but gave her credit for the same for the $250 she recently paid to purge the prior contempt. (*Id.*). The trial court sentenced Wilson to 30 days in jail but suspended the time on conditions that Wilson: (1) comply with all court orders; and (2) reimburse Jones his $163 filing fee for the contempt action by April 12, 2013. (*Id.*). The trial court notified Wilson that she could purge the contempt by paying $750 by April 12, 2013, which sum would be forwarded to Jones. (*Id.*). The trial court filed its judgment entry in contempt on March 15, 2013. (*Id.*).

{¶7} On March 18, 2013, Wilson filed a motion to stay the sentence pending appeal and a notice of appeal. (Doc. Nos. 78-79). On March 19, 2013, the trial court granted Wilson's motion to stay its sentence. (Doc. No. 85).

{¶8} Wilson now appeals raising five assignments of error for review. We elect to address some of Wilson's assignments of error out of the order presented in her brief, combining them where appropriate.

{¶9} Before proceeding with the merits, we note that Jones has failed to file an appellee's brief in this case. Under those circumstances, App.R. 18(C) provides that we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if the appellant's brief reasonably appears to sustain such action." Nevertheless, upon review of appellant's brief and the record herein, we are not persuaded that a reversal is warranted in this case.

**Assignment of Error No. III**

**The court erred by finding appellant was in contempt of the prior judgment of June 11, 2003.**

{¶10} In her third assignment of error, Wilson argues that the trial court erred by finding her in contempt of the court's prior orders. In particular, Wilson argues that she did not interfere with Jones' parenting time on December 28, 2012 since she was merely mistaken about the trial court's visitation schedule. She argues that she did not deny Jones his weekend visitation on January 18, 2013 since she had previously informed him that they would be out of state on a trip,

and Jones did not voice any objection. Wilson argues that Jones merely withdrew his consent for the out-of-state trip after the December 28, 2012 confrontation.

{¶11} We will not reverse a finding of contempt by a trial court absent an abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981) (per curiam). An abuse of discretion consists of more than an error of judgment; rather, it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse-of-discretion standard of review, an appellate court may not merely substitute its judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138 (1991), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶12} Factual findings underpinning the trial court's contempt judgment will not be reversed if they are supported by some competent, credible evidence. *See Sec. Pacific Natl. Bank. v. Roulette*, 24 Ohio St.3d 17, 20 (1986). *See also Kerchenfaut v. Kerchenfaut*, 3d Dist. Allen No. 1-03-49, 2004-Ohio-810, ¶ 13. The trial court is in the best position to judge the credibility of testimony because it is in the best position to observe the witness' gestures and voice inflections. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984); *Johnson v. Johnson*, 71 Ohio App.3d 713, 718 (11th Dist.1991).

{¶13} Kelly Jones, the wife of the complainant and stepmother to the minor child, testified that they had custody of the minor child on December 28, 2012 as part of Jones' Christmas holiday visitation. (Feb. 15, 2013 Tr. at 10, 14). Kelly testified that, around 8:15 p.m. that night, Wilson called Jones wondering the whereabouts of the minor child. (*Id.* at 14-15). Kelly testified that Jones indicated to Wilson that the minor child was still with him since it was his Christmas visitation time per the court order. (*Id.* at 15-16). Kelly testified that Wilson did not agree with Jones keeping the minor child so, a few minutes later, Wilson arrived in her vehicle to pick up the minor child. (*Id.* at 16). According to Kelly, Wilson told Jones that it was her weekend and she wanted custody of the minor child, and that if the child did not come with her, then she was going to take the child out of state for two weekends in January and she was "not f'ing gonna make it up." (*Id.* at 16-17). Kelly testified that this was the first time they heard of Wilson's out-of-state trip. (*Id.* at 18).

{¶14} Kelly testified that, when Jones refused to let the minor child leave with Wilson, Wilson began to beep her car horn and yell for the minor child to come out of the home. (*Id.* at 19). Kelly testified that Wilson was so disruptive that Kelly called the police, which is not something she has a habit of doing. (*Id.*). Kelly identified defense exhibit two as a recording of the conversation Jones had with Wilson the night of December 28, 2012, which was played for the trial court.

(*Id.* at 22-23). Kelly testified that Wilson continued yelling and beeping her horn for several minutes after the end of the recording (D's Ex. 2), until Kelly called the police, at which point Wilson "backed to the end of [the] driveway and when the police car drove by she peeled out of [the] driveway." (*Id.* at 26). Kelly testified that Wilson appeared to be confused about her holiday visitation, and Wilson was interrupting Jones' holiday visitation. (*Id.* at 25).

{¶15} Kelly also identified defense exhibit four as a text message conversation Jones had with Wilson on January 13, 2013 regarding Wilson's out-of-state trip with the minor child. (*Id.* at 34). Kelly testified that this text message conversation was the first time Jones and she learned the specific dates for Wilson's out-of-state trip with the minor child, five days prior to Jones' normal weekend visitation. (Mar. 4, 2013 Tr. at 15). Kelly testified that Jones and she went to Wilson's house to pick up the minor child on Friday evening, January 18, 2013 for a regular weekend visitation, and the minor child was not home. (*Id.* at 12). Kelly testified that Jones called Wilson to find out where the minor child was, and Kelly identified defense exhibit five as an accurate recording of the phone conversation. (*Id.* at 13-14).

{¶16} Tiffin Police Officer Rachel Nye testified that she reported to Jones' house the night of December 28, 2012 for a subject (Wilson) causing a disturbance. (*Id.* at 7-8). Officer Nye identified defendant's exhibit three as a

copy of the police report from the incident. (*Id.* at 8). Officer Nye testified that she eventually contacted Wilson and informed her of the complaint, but Wilson indicated that she should not be calling her regarding custody issues. (*Id.* at 9-10). Officer Nye testified that Wilson admitted to disorderly conduct but attempted to minimize her behavior and did not have much interest in listening to her. (*Id.* at 10). Officer Nye testified that she did not issue a citation but merely warned Wilson. (*Id.* at 10-11).

{¶17} Natalie Jones, the complainant's sister, testified that, on the night of December 28, 2012, her sister, Colleen, and she drove over to Jones' house to see Kelly and the minor child. (*Id.* at 20). Natalie testified that, before she left her house, Kelly called her and she could hear in the background "yelling and beeping, screaming AND beeping, a lot of ruckus." (*Id.* at 21) (emphasis in original). Natalie further testified that, as they were coming to Jones' house, a police cruiser was driving in front of them, and, as they approached the house, she saw Wilson's car peel out backwards from Jones' driveway. (*Id.*). Natalie testified that she saw Kelly and Jones standing in the driveway; Kelly had a telephone, and Jones had paperwork in his hands. (*Id.* at 22).

{¶18} Wilson testified that she went to Jones' home on December 28, 2012 to retrieve the minor child, because she accidentally read the rules regarding extended visitation as opposed to local visitation. (*Id.* at 34). Wilson admitted

that Jones and she had a heated conversation in the driveway concerning the court's visitation orders. (*Id.* at 35). Wilson testified that her friend, Jess, found the court paperwork and told her that she had misread the paperwork, so she left Jones' house. (*Id.* at 36). Wilson testified that she was not aware that the police had been called, and she denied peeling out of the driveway. (*Id.* at 36-37). Wilson testified that she did not recall seeing Jones' sister, Natalie, that night. (*Id.* at 37). Concerning the January 18, 2013 visitation date, Wilson testified that, when Jones picked up the minor child for his Christmas visitation, she informed Jones that she was taking the minor child out-of-state around the third week of January. (*Id.* at 37). Wilson testified that the travel dates were not finalized until January 13, 2013, at which point she informed Jones during a texting conversation. (*Id.* at 37-38). She identified plaintiff's exhibit A as screen shots of her i-Phone depicting the January 13th texting conversation. (*Id.* at 40-41). Wilson testified that she offered to make up the time that Jones would have normally had with the minor child on January 26th, the day they returned plus an additional day, or another weekend. (*Id.* at 38). Wilson testified that she did state that she was taking the minor child out-of-state during the December 28, 2012 argument, though she admitted she was angry and yelling. (*Id.* at 39-40).

{¶19} Jessica Jeanette, Wilson's friend and roommate, testified that she was in the living room of their home when Jones came to pick up the minor child on

Christmas day (2012). (*Id.* at 69-70). Jessica testified that she overheard Wilson and Jones talking at the front door of the house, and Wilson told Jones that she was planning a trip around the third week of January. (*Id.* at 71). Jessica testified that Wilson asked Jones if he had any issues with the trip, and Jones indicated "okay." (*Id.* at 71-72). Jessica testified that, the weekend of December 28, 2012, Wilson thought it was her time for visitation, but Wilson read the document incorrectly. (*Id.* at 73, 81).

{¶20} On rebuttal, Kelly Jones testified that she was with Jones when he picked up the minor child on Christmas day 2012, and she did not observe Jones have any conversation with anyone at the house, except the minor child. (*Id.* at 89). Kelly testified that she did not see Jessica or Wilson that day. (*Id.* at 90). On cross-examination, Kelly testified that she was waiting for Jones in their vehicle which was parked very close to the front door of the house. (*Id.*). Kelly testified that her windows were cracked, and she could hear Jones tell the minor child he would wait for her in the car, and the minor child stated she would be just a minute. (*Id.* at 91).

{¶21} Reviewing the testimony, the trial court concluded that the only notice Jones was given concerning the out-of-state trip was on December 28, 2012 when Wilson, during a profanity-laced rant, told Jones, "I am letting you know right now there is a weekend in January you're not getting her cause were [sic]

going to be out of State so go ahead and fucking keep her and were [sic] going to be gone two weekends in a row (in January) and you are not making it up." (Mar. 15, 2012 JE, Doc. No. 77). The trial court also found that Wilson and Jessica were not credible when they testified that Wilson informed Jones that the minor child and she were going out of state on December 25, 2012. (*Id.*). Consequently, the trial court concluded that Wilson denied Jones his regular visitation for the weekend of January 18, 2013 through January 20, 2013. (*Id.*). The record supports the trial court's factual findings. In particular, the recording of the December 28, 2012 confrontation supports the trial court's findings concerning the statements Wilson made and ultimately its finding that Wilson had not previously obtained Jones' consent for the out-of-state trip scheduled during his normal weekend visitation time. We will also not second-guess the trial court's credibility determination.

{¶22} The trial court's finding that Wilson interrupted Jones' holiday visitation on December 28, 2012 is also supported by the testimony and recording in this case. Kelly testified that Wilson was so disruptive that she called the police, which was not a habit of hers. Furthermore, Officer Nye testified that once she contacted Wilson, Wilson admitted but minimized her behaviors and exhibited an attitude during the phone conversation. Despite the evidence in this case, Wilson argues that she should not be held in contempt for the December 28th

incident because she did not intend to violate the court's order. Intent to violate the court's order is not a necessary element of civil contempt. *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 58 (1971); *Pugh v. Pugh*, 15 Ohio St.3d 136 (1984), paragraph one of the syllabus.

{¶23} Wilson's third assignment of error is, therefore, overruled.

### Assignment of Error No. IV

**The Court erred by finding the appellant in contempt without stating that any type of burden of proof was met by the appellee.**

{¶24} In her fourth assignment of error, Wilson argues that the trial court imposed criminal and civil contempt sanctions—the former requiring proof beyond a reasonable doubt, and the latter requiring clear and convincing evidence—and yet, the trial court failed to state that the applicable burdens of proof had been met for each sanction.

{¶25} "Proceedings in contempt are sui generis in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these." *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201-202 (1973). Although often unclear, the distinction between civil and criminal contempt is important. *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, ¶ 11, citing *Internatl. Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552 (1994). Of particular relevance here, the burden of proof for criminal contempt is proof beyond a reasonable doubt;

whereas, the burden of proof for civil contempt is clear and convincing evidence. *Liming* at ¶ 11; *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980).

**{¶26}** The distinction between civil and criminal contempt is typically based on the sanction's purpose. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001). Civil contempt involves sanctions that are remedial or coercive for the benefit of the complainant rather than the court. *Brown*, 64 Ohio St.2d at 253. Civil contempt is often characterized by conditional sanctions, i.e., the contemnor is jailed until he complies with the court order. *Id.* Criminal contempt, on the other hand, usually involves unconditional prison terms or fines. *Id.* at 253-254. Sanctions in criminal contempt serve to punish the contemnor and to vindicate the authority of the court. *Id.* at 254. To determine the court's purpose in imposing contempt sanctions, the entire record must be reviewed. *Liming* at ¶ 12, citing *State v. Kilbane*, 61 Ohio St.2d 201, 206 (1980).

**{¶27}** The trial court imposed three days of jail it had previously suspended for Wilson's previous contempt. (Mar. 15, 2012 JE, Doc. No. 77). The trial court also imposed a $250 fine, which the trial court found paid in full because Wilson had already deposited $250 from the previous contempt. (*Id.*). The trial court further sentenced Wilson to 30 days in jail, but suspended the time upon conditions that she comply with the court's orders and reimburse Jones his $163 filing fee for the present contempt action. (*Id.*). The trial court also gave Wilson

an opportunity to purge the contempt upon payment of $750 before the end of the day on April 12, 2013. (*Id.*).

{¶28} Upon review, we conclude that these sanctions were conditional, remedial, and designed for the benefit of Jones, the complainant. *Brown*, 64 Ohio St.2d at 253. Therefore, the trial court was proceeding on a civil contempt for which clear and convincing evidence was required. *Brown*, 64 Ohio St.2d at 250. While the trial court's judgment entry does not indicate what burden of proof it required, we must presume regularity absent evidence that it failed to employ the correct standard. *Rudduck v. Rudduck*, 5th Dist. Licking No. 98CA85, 1999 WL 436818, *4 (June 16, 1999).

{¶29} Wilson's fourth assignment of error is, therefore, overruled.

**Assignment of Error No. I**

**The Court abused its discretion by imposing a three (3) day jail sentence for failing to timely pay $163.**

**Assignment of Error No. V**

**The Court abused its discretion by imposing a $750.00 fine on the appellant knowing that she was already determined to be indigent.**

{¶30} In her first assignment of error, Wilson argues that the trial court abused its discretion by finding her in contempt for failing to timely pay the $163 for Jones' filing costs for the previous contempt motion. She argues that, in November 2011, a friend wrote a check for $163 on her behalf payable to the

court, but the check was never cashed; and therefore, she did not willfully disobey the court's order.

{¶31} In her fifth assignment of error, Wilson argues that the trial court abused its discretion by imposing a $750 fine payable by April 12, 2013 knowing she was indigent and the residential parent of the minor child. Wilson argues that the trial court imposed financial purge conditions that she could not possibly pay subjecting her to another 30-day jail term.

{¶32} Like the trial court's contempt finding itself, the trial court's imposition of penalties for contempt is reviewed for an abuse of discretion. *Whitman v. Whitman*, 3d Dist. Hancock No. 5-11-20, 2012-Ohio-405, ¶ 52 (citations omitted).

{¶33} To begin, we disagree with Wilson's characterization that the trial court's imposition of jail time was only for the untimely payment of the $163 filing fee reimbursement. The record in this case demonstrates that this was the second contempt filing concerning Wilson's denial of Jones' visitation time. The Court's October 26, 2011 Order placed Wilson on notice that jail time would be imposed if she failed to satisfy the conditions set forth in the order, including timely payment of the $163 filing fee. (Doc. No. 63). The trial court also admonished Wilson at that time that she was required to abide by the court's visitation orders and could not change a court order without seeking modification

from the trial court. (*Id.*). After Wilson failed to reimburse Jones the filing fee for well over a year after the due date and Wilson continued to interfere with Jones' court-ordered visitation, Jones filed the second contempt motion asking the trial court to enforce its prior contempt order. (Doc. No. 65). Consequently, the trial court's imposition of jail time was for more than just failing to timely pay the $163 filing fee reimbursement as Wilson contends.

{¶34} Wilson's argument that the trial court ignored her efforts to timely pay the filing fee reimbursement and purge condition are meritless. The trial court specifically found that Wilson's and Jessica's testimony concerning the attempted timely payment of the filing fee was not credible. (Mar. 15, 2013 JE, Doc. No. 77). In light of the totality of the circumstances, including the fact that this was Wilson's second contempt finding for similar conduct, we cannot conclude that the trial court abused its discretion by imposing three days of jail.

{¶35} Similarly, we cannot conclude that the trial court's imposition of a $750 purge condition constituted an abuse of its discretion. Wilson's blatant disregard for the trial court's visitation orders was apparent from the record, and this was Wilson's second contempt for similar actions. Whether or not the trial court will impose the 30-day jail sentence if Wilson fails to timely pay the full amount remains to be seen, and we will not speculate on this issue. Wilson can certainly make payments in a good-faith effort to pay the purge condition.

Notably, the trial court stayed its order pending appeal, so Wilson has had over six months to prepare the payment prior to this Court's decision. (Doc. No. 85).

{¶36} Wilson's first and fifth assignments of error are, therefore, overruled.

**Assignment of Error No. II**

**The trial court errored [sic] by imposing jail for unpaid court costs.**

{¶37} In her second assignment of error, Wilson argues that the trial court erred by imposing jail time for failing to pay filing fees. In particular, Wilson argues that Section 15, Article I of the Ohio Constitution prohibits imprisonment for debts in civil actions.

{¶38} "No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud." Section 15, Article I of the Ohio Constitution. The phrase "debt in any civil action" in Section 15, Article I of the Ohio Constitution includes court costs. *Strattman v. Studt*, 20 Ohio St.2d 95 (1969), paragraphs six and seven of the syllabus.

{¶39} Wilson's argument in this assignment of error is based upon the same faulty premise that underpins her first assignment of error—that the trial court imposed its previously suspended jail time for Wilson's failure to reimburse Jones his filing fees alone. The trial court's judgment entry clearly indicates three additional, independent grounds for finding Wilson in contempt: (1) she interfered with Jones' visitation time on December 28, 2012; (2) she denied Jones his regular

weekend visitation on the weekend of January 18, 2013; and, (3) she improperly removed the child from the state. (Mar. 15, 2013 JE, Doc. No. 77). In its previous entry, the trial court ordered Wilson to continue to obey the prior court orders, including the June 11, 2003 judgment regarding the allocation of parental rights and responsibilities, which Wilson failed to do. (Oct. 26, 2011 JE, Doc. No. 63). Therefore, contrary to Wilson's representations, she was not jailed for failing to timely pay the filing fee alone; and therefore, we find no error with the trial court's imposition of jail time.

{¶40} Wilson's second assignment of error is, therefore, overruled.

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**