[Cite as *Powers v. Bowman*, 2024-Ohio-5988.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

SANDRA J. POWERS

    PLAINTIFF-APPELLEE,

  v.

DANIEL WADE BOWMAN,

    DEFENDANT-APPELLANT.

CASE NO. 17-24-03

O P I N I O N

**Appeal from Shelby County Common Pleas Court
Juvenile Division
Trial Court No. 2021-CUS-0008**

**Judgment Affirmed**

**Date of Decision: December 23, 2024**

APPEARANCES:

    *Jeremy M. Tomb* for Appellant

**MILLER, J.**

{¶1} Appellant, Daniel Bowman ("Bowman"), appeals from the February 5, 2024 judgment by the Juvenile Division of the Shelby County Court of Common Pleas, which found him in contempt for not permitting his child to visit with Appellee, Sandra Powers ("Powers"). For the reasons that follow, we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

{¶2} Powers' daughter and Bowman had a child together ("N.B." or "the Child"). Powers and Bowman disputed custody of N.B. On October 12, 2021, the parties stipulated to a number of items, and the trial court ordered the following:

- Bowman, as N.B.'s father, "shall be granted temporary and permanent custody of" N.B.;

- Powers, as N.B.'s maternal grandmother, "shall have visitation with the minor child . . . every other Friday at 5:00 p.m. until Saturday at 5:00 p.m., or as the parties agree"; and

- Powers "shall have one (1) week of vacation with" N.B. each year, and Powers "shall give 60 days written notice to" Bowman of her vacation each year.

(Oct. 12, 2021 Agreed Entry / Stipulation).

{¶3} On April 27, 2023, Powers filed a motion for contempt. In the motion, Powers alleged that Bowman had repeatedly denied her visitation with N.B. and asked the court to find Bowman in contempt of court. On June 23, 2023, Bowman filed a motion to terminate Powers' visitation time. In that motion, Bowman

expressed concerns regarding, among other things: Powers' long-time boyfriend; Powers' house might contain lead-based paint; when Powers would return N.B. to Bowman, N.B. would be constipated, fussy, and have an excessive amount of white paste and baby powder on her private areas; and Powers had called the sheriff and police to Bowman's house numerous times under the pretext of conducting a welfare check. On July 25, 2023, Powers filed a motion to enforce and expand her visitation time with N.B. A hearing on those three motions took place before a magistrate on October 10, 2023.

{¶4} On October 16, 2023, the magistrate issued a Magistrate's Decision, which recommended that Bowman be held in contempt for not permitting N.B. to visit with Powers. The same day, the magistrate filed a "Temporary Order Sua Sponte" reducing Powers' visitation time with N.B. to every other Saturday from 10:00 a.m. to 2:00 p.m. and ordering that Powers not treat any ailment of the child (including diaper rash) during her care except in case of an extreme emergency. (Oct. 16, 2023 Temporary Order Sua Sponte).

{¶5} Bowman filed objections to the Magistrate's Decision. On February 5, 2024, the trial court overruled Bowman's objections and ordered that Bowman be held in contempt for refusing to allow Powers visitation time with N.B. in April 2023. The court's findings of fact included that Powers' home was built in 1923 and may have asbestos shingles on its roof, N.B. has had a series of diaper rashes,

Powers contacted law enforcement 12-50 times over the years complaining about Bowman, and Powers contacted children services approximately 12 times with no safety concerns being identified. (Feb. 5, 2024 Judgment Entry). After recognizing that some courts have held that a residential parent may have a defense in a contempt proceeding for interference with parenting time if the residential parent has a reasonable, good faith belief that he or she must deny visitation to protect the safety of the child, the trial court determined:

> Bowman's defense as to the contempt is not sufficient. Bowman argues Powers' house is not safe because of lead paint and a deteriorating asbestos shingle roof. There is no evidence of asbestos or lead poisoning and Bowman didn't seem to have a problem with the Child staying at the same Powers' home before April of 2023.
>
> Bowman also alleges Powers continued to inappropriately treat a diaper rash condition. This does not rise to the level of Powers['] unfitness to take care of the Child based upon the evidence presented.
>
> The actions of Powers reporting Bowman to DJFS/CSD on at least twelve (12) occasions and the police 12-50 times is also not a reason to withhold the Child. The remedy in this situation would be to file a Motion with the Court to reduce or terminate Powers' visitation. Bowman did not file this Motion until June 23, 2023.
>
> Bowman admits that in April of 2023 he elected to terminate Powers' future visitation. No motion or temporary order request to do so was filed with the Court. As such[,] Powers remained entitled to her visitation with the child.
>
> Bowman raises a lot of concerns that may be the subject [of] a motion to terminate or amend visitation. Those issues were not before the Court.
>
> It is difficult for this Court to find Bowman's unilateral decision to terminate visitation justified for the safety of the child when, in fact,

he allowed Powers' conduct to continue without apparent concern for such a long period of time. If necessary for the child's safety[,] it is reasonable to assume that Bowman would have taken action much sooner or that proper investigation would have validated those concerns.

(Feb. 5, 2024 Judgment Entry). As a result of finding Bowman in contempt of court, the trial court sentenced Bowman to three days in jail, but ordered that he could purge those three days by reimbursing Powers a total of $750 (consisting of attorney fees and court costs) within 60 days. This appeal followed.

## II.     ASSIGNMENTS OF ERROR

{¶6} Bowman raises two assignments of error for our review:

### First Assignment of Error

**The Trial Court's decision to hold Daniel Bowman in contempt of Court was an abuse of discretion.**

### Second Assignment of Error

**The Trial Court's decision to hold Daniel Bowman in contempt of Court was against the manifest weight of the evidence.**

## III.     DISCUSSION

### A.     First Assignment of Error

{¶7} In the first assignment of error, Bowman argues that the trial court abused its discretion in holding him in contempt for violating its order concerning visitation. Despite acknowledging that he violated the court's order, he contends he adequately "presented the defense of a reasonable, good faith belief that he could deny visitation to protect the safety of his child." (Appellant's Brief at 1). In

support, he also invokes the clean-hands doctrine and insists Powers had "unclean hands."

### 1. Standard of Review

**{¶8}** As shown in the assignment of error itself, Bowman acknowledges we review contempt orders for an abuse of discretion. *See also State ex rel. Adkins v. Sobb*, 39 Ohio St.3d 34, 35 (1988); *Wilson v. Jones*, 2013-Ohio-4638, ¶ 11 (3d Dist.) ("[w]e will not reverse a finding of contempt by a trial court absent an abuse of discretion"). This is a "highly deferential standard of review." *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-5614, ¶ 29. A trial court abuses its discretion when its conduct is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9.

### 2. Applicable Law

**{¶9}** A court may hold a party in contempt for failing to comply with its order. *Zakany v. Zakany*, 9 Ohio St.3d 192, 193-194 (1984); *see also* R.C. 2705.02(A). "A person guilty of any of the following acts may be punished as for a contempt: . . . [d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." R.C. 2705.02(A). A court also has both inherent and statutory authority to punish contempt. *Id.*; *Zakany* at 193-194.

{¶10} "Intent to violate the court's order is not a necessary element of civil contempt." *Wilson* at ¶ 22. A movant's burden of proof for civil contempt is clear and convincing evidence. *Id.* at ¶ 25; *State ex rel. Doner v. Zehringer*, 2012-Ohio-5637, ¶ 3. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶11} Contempt of court by disobeying a court order constitutes "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. "The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." *Id.* at paragraph three of the syllabus. Yet, several of our sister appellate district courts have found there exists a defense (or an exception) to not complying with a visitation order when a party has a reasonable, good faith belief that he or she must deny visitation to protect the child's safety. *E.g., Brennan*

*v. Brennan*, 2021-Ohio-1865, ¶ 37 (5th Dist.); *B.B. v. O.D.*, 2024-Ohio-2388, ¶ 19 (2d Dist.); *Thompson v. Thompson*, 2023-Ohio-667, ¶ 57 (12th Dist.). We note that, although the holding was made outside the context of contempt for violating a child visitation order, the Ohio Supreme Court has held that "[i]t is no defense to a finding of civil contempt that a party acted in good faith or upon the advice of counsel." *State ex rel. Adkins*, 39 Ohio St.3d at 34-36, citing *Windham Bank*, 27 Ohio St.2d 55.

### 3. Analysis

{¶12} Bowman concedes this case involves a judgment finding him in *civil* contempt. *See also Pugh v. Pugh*, 15 Ohio St.3d 136, 139-140 (1984) (explaining differences between civil and criminal contempt). Additionally, Bowman does not dispute there was a valid court order entitling Powers to periodic visitation time with N.B. and he denied Powers visitation time, in violation of that order. Instead, Bowman relies on the good-faith defense/exception that some appellate courts have recognized, as well as Powers' alleged "unclean hands."

{¶13} Given the facts of this case, we need not decide whether there is a defense or exception to contempt for non-compliance with court ordered visitation if a party had a reasonable, good faith belief that he or she must deny visitation to protect the child's safety.[1] Even if there is, Bowman has not shown that the trial

---

[1] Bowman does not cite to, and we have not found, any opinion from our court or from the Supreme Court of Ohio recognizing the defense/exception. This does not mean we disagree with the reasoning behind it.

court abused its discretion in finding such a defense did not apply and, instead, finding him in contempt of court. The trial court explained that the things Bowman complained about had been continuing for a long period of time without apparent concern from Bowman. Importantly, Bowman failed to show a reasonable, good faith belief under the circumstances that he needed to deny Powers visitation in order to protect N.B.'s safety, instead of seeking judicial intervention or following the court's order. *E.g.*, *Thompson*, 2023-Ohio-667, at ¶ 59 (12th Dist.) (no abuse of discretion in the trial court's rejection of father's good-faith defense, and finding him in contempt of court, where father never moved for an emergency hearing or an emergency order prior to unilaterally withholding the children from mother or after moving to suspend mother's parenting time).

{¶14} There was competent, credible evidence to support the trial court's decision that Bowman did not show he was justified in unilaterally denying visitation to Powers due to his alleged belief that N.B.'s safety was in danger. Initially, we note that Bowman testified that "all these allegations"—including the children services agency being called numerous times in the past—were the reason he stopped allowing visitation. (Oct. 10, 2023 Tr. at 130). By his own admission, Bowman stopped visitation in response to Powers' repeated and baseless calls to

---

*See, e.g., Shafer v. Shafer*, 1993 WL 524958, *2-5 (4th Dist. Dec. 1, 1993) (providing justification for recognizing such an exception); *Hensley v. Hensley*, 2009-Ohio-1738, ¶ 25-26 (6th Dist.) (explaining why such a defense "makes sense").

both law enforcement and children services. (Appellant's Brief at 3). Thus, Bowman's "reasons for denying visitation in this case were not to protect [N.B.] from any perceived immediate, serious physical harm." *Shook v. Shook*, 1998 WL 663256, *2 (9th Dist. Sept. 23, 1998) (no abuse of discretion in finding father in contempt of court for refusing visitation instead of seeking a modification of the visitation order, where father believed mother was not properly giving medication to the child, blamed mother for problems with child's behavior, and did not approve of mother's fiancé). For example, the redness and rashes had been ongoing for a period of time. Bowman testified N.B. had rashes when she would return from visits with Powers and that he had even previously spoken with Powers about the rashes, advising her to just use Vaseline instead of white paste and baby powder. Bowman also testified that, as a lead-abatement contractor and owner of a roofing company, he had concerns with N.B. being in Powers' home—specifically, concerns about lead in the home's original woodwork and floors, as well as asbestos in its roof. However, Bowman acknowledged that Powers had lived in the house since 2008, Bowman himself had planned to purchase the house in 2008 (thus, he was familiar with it), the visitation order had been in place since 2021, and he never previously expressed concerns or had N.B. tested for lead poisoning. *See Brennan*, 2021-Ohio-1865, at ¶ 39-43 (5th Dist.) (trial court did not abuse its discretion in finding mother in contempt for denying father parenting time; competent, credible evidence

-10-

supported rejecting mother's good-faith defense due to the delay between the reason for her concern and denying visitation to father).

{¶15} The circumstances here are sufficiently egregious as contrasted to, for example, a case cited by Bowman in support of his argument: *Clark v. Clark*, 1993 WL 119814 (12th Dist. Apr. 19, 1993). In *Clark*, the parties had not experienced any problems regarding visitation until there was an allegation that appellant had sexually abused the child. The appellee testified that, following the allegation, she chose to avoid the appellant's attempt to pick up the child. *Id.* at \*2. It was "obvious that appellee's sole motivation in not allowing appellant to visit [the child] was to shield [the child] from any additional harm," so the appellate court found it was not an abuse of discretion for the trial court to have denied appellant's contempt motion. *Id.*

{¶16} Next, regardless whether the clean-hands doctrine applies in contempt proceedings concerning child visitation, we do not find the trial court erred in not applying it to deny Powers' contempt motion. "'The maxim, 'He who comes into equity must come with clean hands,' requires only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject-matter of his suit.'" *Goldberger v. Bexley Properties*, 5 Ohio St.3d 82, 84-85 (1983), quoting *Kinner v. Lake Shore & Mich. S. Ry. Co.*, 69 Ohio St. 339 (1904), paragraph one of the syllabus. We have explained that, for the clean-hands doctrine to apply, the

offending conduct must constitute reprehensible, grossly inequitable, or unconscionable conduct, rather than mere negligence, ignorance, or inappropriateness. *GMAC Mtge., LLC v. Jackson*, 2013-Ohio-2150, ¶ 26 (3d Dist.). We have further explained that the doctrine should not be applied where a party has legal remedies available to address the opposing party's asserted misconduct. *Id.* "The application of the doctrine is at the discretion of the trial court." *Id.*

**{¶17}** Here, the trial court considered Powers' alleged misconduct in deciding whether to hold Bowman in contempt. (*See* Feb. 5, 2024 Judgment Entry). Additionally, after Bowman filed his motion to terminate Powers' visitation and based on evidence presented at the October 10, 2023 hearing, the trial court reduced the amount of Powers' unsupervised visitation time and prohibited her from taking certain actions. Thus, not only did Bowman have legal remedies available to address Powers' alleged misconduct, he was at least partially successful in pursuing these remedies to stop the misconduct. We do not find the trial court abused its discretion in not applying the clean-hands doctrine. *See DiDonato v. DiDonato*, 2016-Ohio-3129, ¶ 34-36 (5th Dist.) (affirming contempt against parent and finding no abuse of discretion where trial court refrained from reliance on the clean-hands doctrine to bar a finding of contempt); *Fisher v. Fisher*, 2011-Ohio-5251, ¶ 17-19 (8th Dist.) (clean-hands doctrine did not apply, despite defendant's claims that

plaintiff failed to comply with divorce judgment, where party had a legal remedy available to address the asserted misconduct).

{¶18} Bowman's first assignment of error is overruled.

### B.     Second Assignment of Error

{¶19} Bowman's brief does not distinguish between his argument in support of the first and second assignments of error. The second assignment of error relies on the same evidence to claim "the Trial Court abused its discretion in holding Daniel Bowman in contempt, which was against the manifest weight of the evidence." (Appellant's Brief at 14).

{¶20} It appears that Bowman is mixing arguments and standards of review. As stated above, he concedes that we review the trial court's civil contempt order under an abuse of discretion standard. As we have previously explained in applying the abuse of discretion standard when reviewing a judgment for indirect civil contempt, "[f]actual findings underpinning the trial court's contempt judgment will not be reversed if they are supported by some competent, credible evidence." *Wilson*, 2013-Ohio-4638, at ¶ 4-5, 12, 28 (3d Dist.); *see also Burt v. Dodge*, 65 Ohio St.3d 34, 35, fn. 1 (1992) (in contrast to direct contempt, "indirect contempt occurs outside the court's presence"). Bowman fails to delineate his second assignment of error, and it is either based on a mistaken premise or inadequately supported. *See Van Scoder v. Van Scoder*, 2008-Ohio-4780, ¶ 4, 11-16 (3d Dist.) (simply analyzing

the contempt order for an abuse of discretion, where appellant argued the trial court abused its discretion and went against the manifest weight of the evidence in overruling her motion for contempt). Consequently, Bowman's second assignment of error is overruled.

## IV.    CONCLUSION

{¶21} For the foregoing reasons, Bowman's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Juvenile Division of the Shelby County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/jlm**